Slip Op. No. 20-129

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant,<br><br>　　and<br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,<br><br>　　　　　　Defendant-Intervenors. | Before: Timothy C. Stanceu, Chief Judge<br><br>Court No. 19-00013 |

## OPINION AND ORDER

[Remanding to the issuing agency a decision placing certain door thresholds within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China]

Dated: August 27, 2020

*Jeremy W. Dutra* and *Peter Koenig*, Squire Patton Boggs (US), LLP, of Washington, DC, for plaintiff.

*Aimee Lee*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, New York, for defendant. With her on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Orga Cadet*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Alan H. Price*, *Robert E. DeFrancesco, III*, and *Elizabeth S. Lee*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.

Stanceu, Chief Judge: Plaintiff Columbia Aluminum Products, LLC ("Columbia") contests a decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that its imported products, which consist of ten models of "door thresholds," are within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. Before the court is plaintiff's motion for judgment on the agency record, which is opposed by defendant United States and defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura Products, Inc. The court grants plaintiff's motion and remands the contested decision to the Department for reconsideration.

## I. BACKGROUND

### A. The Contested Decision

The agency decision contested in this litigation (the "Scope Ruling") is *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 39 (Int'l Trade Admin. Dec. 19, 2018) ("*Scope Ruling*").

### B. The Antidumping Duty and Countervailing Duty Orders

Commerce issued the antidumping duty and countervailing duty orders pertinent to this litigation (the "Orders") in May 2011. *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

### C. Columbia's Scope Ruling Request

Columbia submitted a request for a scope ruling (the "Scope Ruling Request") on March 14, 2018, describing therein, and in supplemental responses to Commerce, ten models of door thresholds. *Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce re: Aluminum Extrusions from the People's Republic of China: Scope Ruling Request for Columbia Aluminum Products, LLC*, P.R. Doc. 1 (Mar. 14, 2018) ("*Scope Ruling Request*"); *Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce re: Aluminum Extrusions from the People's Republic of China: Supplement to Columbia Aluminum Products, LLC's Scope Ruling Request* 4–6, P.R. Doc. 10 (July 10, 2018) ("*Supplement to Scope Ruling Request*"). The relevant facts pertaining to Columbia's door thresholds, as described in Columbia's submissions to Commerce and in the Scope Ruling, do not appear to be in dispute and are set forth below.

Seven of Columbia's models of door thresholds are in three series (the "IM 900 Plus Series," the "IM 900 Plus Home Center Series," and the "990 Series"), along with three proprietary models (the 122, 128, and 129 series) produced for one customer, which have the same characteristics as the 990 Series. *Scope Ruling Request* 13. Each door threshold is an assembly consisting of various components, including a component fabricated from an aluminum extrusion and various components that are not made of aluminum. *Id.* at 14.

Specifically, each of the models in the IM 900 Plus Series and the IM 900 Plus Home Center Series contains an aluminum component fabricated from an extrusion, a polyvinyl chloride ("PVC") extrusion, an insert bar to permit raising and lowering of the threshold, and an injection-molded wood-filled plastic substrate. *Id.* at 14 (citing *Scope Ruling Request* 3). The models of the 990 Series and the three proprietary models contain an aluminum component

**Court No. 19-00013** Page 4

fabricated from an extrusion, a PVC extrusion, and an extruded PVC substrate. *Id.* (citing *Scope Ruling Request* 3). It is uncontested that the single component in each door threshold that is fabricated from an aluminum extrusion is made of an aluminum alloy identified in the scope language of the Orders. *See id.* at 33.

### D. The Contested Scope Ruling

Commerce issued the Scope Ruling on December 19, 2018, in response to Columbia's Scope Ruling Request, and the requests of Worldwide Door Components, Inc. and MJB Wood Group, Inc., each of which also sought a scope ruling on assembled door thresholds. *Id.* at 1. The Scope Ruling concluded that the aluminum extrusion component within each of Columbia's door thresholds was subject to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China, but that the non-aluminum components were not. *Id.* at 37–38.

### E. Proceedings in the Court of International Trade

Columbia brought this action to contest the Scope Ruling on January 18, 2019. Summons, ECF No. 1; Compl., ECF No. 3. Plaintiff moved for judgment on the agency record pursuant to USCIT Rule 56.2 on July 31, 2019. Pl. Columbia Aluminum Prods., LLC's Rule 56.2 Mot. for J. on the Agency R., ECF No. 29 ("Pl.'s Mot."). Defendant filed its opposition on October 24, 2019. Def.'s Response to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 33 ("Def.'s Response"). Defendant-intervenors filed their opposition on the same day. Def.-Intervenors' Response to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 34 ("Def.-Intervenors' Response"). Plaintiff replied on November 25, 2019. Pl. Columbia Aluminum

Court No. 19-00013 Page 5

Prods., LLC's Reply Br. in Further Support of its Rule 56.2 Mot. for J. on the Agency R., ECF No. 37 ("Pl.'s Reply").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1] Among the decisions that may be contested according to Section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." *Id*. § 1516a(a)(2)(B)(vi). In reviewing the Scope Ruling, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

### B. The Scope Ruling Misinterprets the Scope Language of the Antidumping Duty and Countervailing Duty Orders

Columbia's claim is that Commerce misinterpreted the scope language of the Orders in concluding that Columbia's door thresholds could not qualify for a specific exclusion from the Orders, the "finished merchandise exclusion." Pl.'s Mot. 6–15.

The scope language is essentially the same in both Orders. The Orders apply generally to "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations

---

[1] All citations to the United States Code are to the 2012 edition. All citations to the Code of Federal Regulations are to the 2018 version.

**Court No. 19-00013** Page 6

published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653. Such extrusions may be "produced and imported in a wide variety of shapes and forms," and, after extrusion, may be subjected to drawing and to further fabrication and finishing. *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654.

>In its decision, Commerce first addressed the following scope language:

>Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.[2] The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

---

[2] The antidumping and countervailing duty orders at issue in this case (the "Orders") contain a number of exclusions. The "finished goods kit exclusion" reads as follows:

>The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (May 26, 2011) ("*AD Order*"); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (May 26, 2011) ("*CVD Order*"). Columbia does not argue that the finished goods kit exclusion applies to its door thresholds.

Court No. 19-00013                                                                                          Page 7

*Scope Ruling* 33 (quoting *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654). Referring to the first sentence quoted above, the Scope Ruling concluded that ". . . the aluminum extruded components of . . . Columbia's door thresholds may be described as parts for final finished products, *i.e.*, parts for doors, which are assembled after importation (with additional components) to create the final finished product, and otherwise meet the definition of in-scope merchandise." *Scope Ruling* 33. The Scope Ruling erred in relying on that sentence from the scope language, which is inapplicable to the issues presented by Columbia's imported products. Commerce failed to recognize that that the subject of the first sentence quoted above is "[s]ubject *aluminum extrusions*." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added). The sentence refers to the way that goods may be described "at the time of importation," but according to the uncontested facts, Columbia's door thresholds are not "aluminum extrusions" at the time of importation; rather, they are door thresholds that contain an aluminum extrusion as a component in an assembly. The aluminum extrusion component in each, which is not itself the imported article, becomes part of an assembly before, not after, importation. The effect of the quoted sentence is that an extrusion that has undergone any of various types of processing (but not assembly) after being extruded but prior to importation, to adapt it to a particular use as a part for a final finished product that is assembled after importation, still is an "extrusion" for purposes of the scope and remains within the general scope language, no matter how it is described upon importation.[3]

---

[3] The scope language lists as exemplars various types of fabrication and similar processing that an extrusion may undergo prior to importation and still be an aluminum "extrusion" for purposes of the Orders. *See AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. The description of such processing does not include assembly. *See id.*

Court No. 19-00013                                                                                          Page 8

The following sentence in the Orders, "[s]uch parts that otherwise meet the definition of aluminum extrusions are included in the scope," confirms this point. *See id*. Columbia's door thresholds do not meet that definition; they are not, in the words of the scope language, "aluminum extrusions which are shapes and forms, produced by an extrusion process." *Id*.

The Scope Ruling concluded as follows:

> Additionally, we find that the door thresholds, which constitute aluminum extrusion components attached to non-aluminum extrusion components, may also be described as subassemblies pursuant to the scope of the *Orders*. Thus, the non-aluminum extrusion components (*i.e.*, . . . the PVC extrusions, insert bars, injection molded wood filled plastic substrates, [and] extruded PVC substrates in Columbia's door thresholds), which are assembled with the in-scope aluminum extrusion components, are not included in the scope of the *Orders.*

*Scope Ruling* 34.

After concluding that the "subassemblies" provision applied to the aluminum extrusion component of each of Columbia's door thresholds, the Scope Ruling again misinterpreted a provision within the scope language, which reads as follows:

> {S}ubject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

*Id.* (quoting *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654). Commerce concluded from this language that "the plain language of the scope of the *Orders* specifies that 'door thresholds' are included within the scope 'if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.'" *Id.* (footnote omitted). "In light of the above, we find that . . . Columbia's door thresholds are within the scope of the *Orders*." *Id.* This conclusion is erroneous because, here again, the subject of the first sentence

quoted from the Orders, above, is "[s]ubject *extrusions*." *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added). As the court noted above, Columbia's door thresholds are not "extrusions": they are not, in the words of the scope language, "aluminum extrusions which are shapes and forms, produced by an extrusion process," and they do not, therefore, "otherwise meet the scope definition." *See id.* at 30,650–51, 76 Fed. Reg. at 30,653–54. Instead, they are goods assembled from multiple components, only one of which has been fabricated from an aluminum extrusion.

### C. Commerce Erred in Refusing to Consider Whether Columbia's Door Thresholds Satisfied the Requirements of the "Finished Merchandise Exclusion"

Among the specific exclusions provided in the scope language is the "finished merchandise exclusion," which provides as follows:

> The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. In the Scope Ruling, Commerce ruled that Columbia's door thresholds do not qualify for this exclusion. Commerce stated that "[a]s an initial matter, we find that the express inclusion of 'door thresholds' within the scope of the *Orders* (regardless of whether the door thresholds are ready for use at the time of importation) renders the reliance of . . . Columbia upon the finished merchandise exclusion inapposite." *Scope Ruling* 35–36; *see id.* at 37 ("[W]e find that because of the explicit inclusion of door thresholds as in-scope merchandise, it is unnecessary for Commerce to further consider the finished merchandise or finished goods kit exclusions in these scope proceedings.") Commerce continued, "[f]urthermore, finding door thresholds excluded under the finished

Court No. 19-00013                                                                                                   Page 10

merchandise exclusion would render the express inclusion of 'door thresholds' meaningless." *Id.* at 36.

The court rejects the Department's reasoning because it rests on the misinterpretations of the scope language that the court identified previously. The scope language does not expressly include all door thresholds in which there is an extruded aluminum component. Instead, as the court has discussed, the inclusion of "door thresholds" in the scope language as an exemplar is confined to door thresholds that *are* aluminum extrusions. *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 ("Subject *extrusions* may be identified with reference to their end use, such as fence posts, electrical conduits, *door thresholds* . . . .") (emphases added). Simply stated, a good that *contains* an extruded aluminum component as one of a number of components is not the same as a good that *is* an extrusion.

Commerce also erred in reasoning that "finding door thresholds excluded under the finished merchandise exclusion would render the express inclusion of 'door thresholds' meaningless." *Scope Ruling* 36. Door thresholds that are fabricated from aluminum extrusions are "extrusions" for purposes of the scope language and are expressly included in the scope by operation of the reference to "door thresholds"; other door thresholds, which are not themselves "extrusions" for purposes of the Orders, are not. Rather than rendering the express inclusion of door thresholds meaningless, excluding the assembled goods at issue from the Orders according to the finished merchandise exclusion would have no effect at all on the express inclusion of door thresholds, for a straightforward reason: a door threshold that is fabricated from an aluminum extrusion could never qualify under the finished merchandise exclusion in the first place because the finished merchandise exclusion applies only to assembled goods. *See AD*

**Court No. 19-00013**                                                                                          Page 11

*Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (excluding from the Orders "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry").

Because the premise under which Commerce refused to consider the terms of the finished merchandise exclusion was based on a misinterpretation of the general scope language, which in this case does not expressly identify door thresholds that are assembled from extruded aluminum components and non-aluminum components, Commerce erred in refusing to consider whether the requirements of the finished merchandise exclusion were satisfied.

The Scope Ruling relies on the decision of the Court of Appeals for the Federal Circuit ("Court of Appeals") in *Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015) ("*Shenyang Yuanda*") for the proposition that the reference to "door thresholds" as an exemplar in the scope language requires it to disregard the finished merchandise exclusion. *Scope Ruling* 36 & n. 313. This reliance is misplaced. *Shenyang Yuanda* does not state a holding that controls the outcome of this case.[4] The rule Commerce advocates would defeat the fundamental principle the Court of Appeals established in

---

[4] *Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015) ("*Shenyang Yuanda*") did not involve a door threshold. In that decision, the Court of Appeals for the Federal Circuit ("Court of Appeals") held that a unit of a curtain wall was within the scope of the orders at issue in this litigation. The opinion considered the curtain wall unit to be a "subassembly" within the meaning of the scope language. *Id.* at 1357. The Court of Appeals also concluded that the finished merchandise exclusion did not apply to an individual curtain wall unit, which the Court of Appeals indicated was not "merchandise." *Id.* at 1358 ("Yuanda itself concedes that 'absolutely no one purchases for consumption a single curtain wall piece or unit.'" (quoting *Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 38 CIT __, __, 961 F. Supp. 2d 1291, 1298–99 (2014)). In both respects, the decision in *Shenyang Yuanda* is inapposite.

Court No. 19-00013                                                                                                    Page 12

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) and reaffirmed in numerous subsequent cases, under which Commerce must give effect to unambiguous scope language. In ruling on a scope issue, Commerce must interpret scope language rather than attempt to change it. *Id.* at 1097; *see also Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1301 (Fed. Cir. 2013). Scope language creating a specific exclusion from the general scope language is no exception to this principle. Here, Commerce was not free to disregard the finished merchandise exclusion.

In summary, the Scope Ruling misreads the scope language to conclude that it expressly includes door thresholds that are not extrusions, and it erroneously declined to consider whether Columbia's imports satisfied a specific exclusion from the scope. Moreover, the Department's misreading of the scope language caused it to misapply the factors that its regulations require it to consider in making any scope ruling. *See* 19 C.F.R. § 351.225(k)(1). The court turns to this issue in the next section.

### D. The Department's Misinterpretation of the Express Inclusion of "Door Thresholds" Caused It to Apply 19 C.F.R. §351 225(k)(1) Erroneously

The Department's regulations provide, as is pertinent here, that "in considering whether a particular product is included within the scope of an order . . . , the Secretary will take into account the following: . . . [t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1). In applying these factors (the "(k)(1) factors"), the Department repeated its mistake of presuming that the Orders expressly

include door thresholds that contain both aluminum extrusions and non-aluminum parts as components. Regarding the first factor, the petition, Commerce erroneously reasoned as follows:

> This determination is further supported by the sources described in 19 CFR 351.225(k)(1). For example, we find that review of the Petition to the underlying investigations demonstrates that the petitioner expressly included "door thresholds" in the original investigations. For instance, the Petition provides that: "The subject extrusions may be identified as other goods, *e.g.*, heat sinks, **door thresholds**, or carpet trim. Again, such goods that otherwise meet the definition of aluminum extrusions are included in the scope.

*Scope Ruling* 34 (quoting Petition at Vol. 1, p. 5). That the petition sought an investigation of aluminum extrusions identified as door thresholds was irrelevant to the issue presented by Columbia's Scope Ruling Request, which sought a determination on door thresholds that are *not* aluminum extrusions. The same error affects the Department's analysis of the ITC's report of its affirmative injury determination:

> The ITC Report further confirms statements from the Petition that "aluminum extrusions serve in a wide variety of applications such as window and **door frames and sills**, curtain walls, **thresholds**, gutters, solar panel frames, and vehicle parts{,}" and also states that: "[s]eventeen firms reported that after fabrication, the aluminum extrusions they produce may become known as another product before the point of sale, including . . . **doors and door thresholds**[.]"

*Id.* at 35 (quoting *Certain Aluminum Extrusions from China*, Inv. Nos. 701-TA-475 and 73l-TA-1177, USITC Pub. 4229 at II-5, II-9 (May 2011)). The quoted discussion in the ITC's report pertains to aluminum extrusions that are fabricated into door thresholds, not assembled goods of the type Columbia described in its Scope Ruling Request.

Further, the Department's analysis is unsupported by certain evidence pertaining to the initial investigation. The paragraph directed to subject extrusions referred to by their end use, which includes the reference to door thresholds, was not in the original petition in final form but

was revised in response to a supplemental questionnaire from Commerce.  *Id.* at 34–35.  The petitioner specified that this revised language "clarified that certain covered extrusions may be final, finished goods *in and of themselves*."  *Id.* at 35 (emphasis added) (quoting four letters from the petitioner to Commerce during the course of the investigation).  The Department's insistence that all "door thresholds" are in-scope merchandise based on this scope language is inconsistent with the explanation that the paragraph intended to capture extrusions that are "final, finished goods in and of themselves."  *See id.*  According to the uncontested record evidence, Columbia's door thresholds are not extrusions "in and of themselves."

In addressing prior decisions of the Secretary of Commerce, the Scope Ruling commits the same error, distinguishing those past scope rulings in which the good under consideration was specifically identified in the scope language as in-scope merchandise from those in which it was not.  *Id.* at 36–37.  Concerning the latter category, the Scope Ruling explains that:

> Because those products [at issue in prior scope rulings] were not specifically identified in the scope language, the determinations involved an analysis as to whether the scope exclusion for finished merchandise applied.  Here, based on the specific inclusion of "door thresholds" within the scope of the Orders, we agree with the petitioner that the finished merchandise scope exclusion is inapplicable with respect to the products at issue in these scope requests.

*Id.* at 37.  Again, Columbia's products are not specifically identified in the scope language. Mistakenly relying on its past scope rulings, Commerce erred in declining to consider whether or not Columbia's products were "finished merchandise."  *See id.* at 14–20 (discussing twelve scope rulings regarding goods containing aluminum extrusions and non-aluminum extrusion components).

Court No. 19-00013    Page 15

### E. On Remand, Commerce Must Consider Whether the Door Thresholds Qualify for the Finished Merchandise Exclusion

In opposing Columbia's motion, defendant argues that "because the finished merchandise exclusion only mentions 'doors with glass or vinyl,' but not door thresholds, the finished merchandise exclusion does not apply to door thresholds." Def.'s Response 18 (citing *Scope Ruling* 36). This argument is based on a misreading of the finished merchandise exclusion that considers the exemplars as exhaustive of the scope of the exclusion. The exclusion applies to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, *such as* finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added). Under defendant's misguided interpretation, only assembled merchandise specifically identified by the exemplars could qualify for the finished merchandise exclusion.

Defendant argues, further, that "the explicit reference to an exclusion for heat sinks, compared to the absence of a similar exclusion for door thresholds, further supports Commerce's determination that door thresholds are within the scope of the orders." Def.'s Response 19. Defendant-intervenors make essentially the same argument. Def.-Intervenors' Response 15. This argument is also meritless, as it confuses a good fabricated from an aluminum extrusion with an assembled good containing an aluminum extrusion and other non-aluminum parts. The Orders address heat sinks that are fabricated from extrusions; such heat sinks are specifically excluded from the Orders if they are "finished heat sinks" that meet thermal performance requirements. *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. The

treatment of heat sinks in the scope language of the Orders has no relevance to the issue of whether the finished merchandise exclusion (which applies only to assembled goods) applies to the door thresholds at issue here.

Defendant-intervenors also argue that "the scope language contains no distinction between thresholds comprised solely of extruded aluminum and thresholds that contain both extruded aluminum and non-extruded aluminum components." Def.-Intervenors' Response 17. To the contrary, as the court has explained, the scope language expressly includes door thresholds that are "subject extrusions" while not addressing specifically door thresholds that are not themselves aluminum extrusions. Moreover, subject extrusions are *per se* within the scope of the Orders while assembled goods containing non-aluminum-extrusion components are treated differently, by operation of the subassemblies provision. Under the latter, only the aluminum extrusion component of a subassembly, not the whole assembly, potentially is subject to the Orders, and the Orders specifically make the finished merchandise exclusion available to qualifying assembled merchandise.

In summary, Commerce erred in refusing to determine whether the imported, assembled door thresholds satisfy the requirements of the finished merchandise exclusion. Commerce now must give full and fair consideration to the issue of whether this exclusion applies, upon making findings that are supported by substantial record evidence.

### III. Conclusion and Order

Therefore, upon consideration of plaintiff's motion for judgment on the agency record and all papers and proceedings had herein, and upon due deliberation, it is hereby

      **ORDERED** that plaintiff's motion for judgment on the agency record (July 31, 2019), ECF No. 29, be, and hereby is, granted; it is further

      **ORDERED** that Commerce, within 90 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

      **ORDERED** that plaintiff and defendant-intervenors shall have 30 days from the filing of the Remand Redetermination in which to submit comments to the court; and it is further

      **ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 15 days from the date of filing of the last comment to submit a response.

                                                                         /s/ Timothy C. Stanceu
                                                                      Timothy C. Stanceu, Chief Judge

Dated:   August 27, 2020
            New York, New York