Slip Op. No. 21-116

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC, <br><br>        Plaintiff, <br><br>     v. <br><br> UNITED STATES, <br><br>        Defendant, <br><br>   and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE and ENDURA PRODUCTS, INC., <br><br>        Defendant-Intervenors. | Before:  Timothy C. Stanceu, Judge <br><br> Court No. 19-00013 |

### OPINION AND ORDER

[Remanding for reconsideration an agency decision, issued in response to court order, interpreting the scope of antidumping and countervailing duty orders on aluminum extrusions]

Dated: September 14, 2021

*Jeremy W. Dutra*, Squire Patton Boggs (US), LLP, of Washington, D.C., for plaintiff.  With him on the brief was *Peter Koenig*.

*Tara K. Hogan*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, New York, for defendant.  With her on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Aimee Lee*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Robert E. DeFrancesco, III*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.  With him on the brief were *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge: Plaintiff Columbia Aluminum Products, LLC ("Columbia") brought this action to contest a decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that its imported products, "door thresholds" containing aluminum extrusions among other components, are within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders").  Before the court is the decision Commerce has submitted in response to the court's opinion and order in *Columbia Aluminum Products, LLC v. United States*, 44 CIT __, 470 F. Supp. 3d 1353 (2020) ("*Columbia I*"), which remanded the contested determination to Commerce for reconsideration.

The court again issues an order of remand, concluding that the decision now before the court relies on a finding or inference pertaining to Columbia's door thresholds that is contradicted by certain record evidence and is unsupported by any specific evidence Commerce cited in that decision.  The court directs Commerce to reconsider the impermissible finding or inference and then determine anew whether Columbia's door thresholds qualify for a specific exclusion (the "finished merchandise exclusion") set forth in the scope language of the Orders.

## I. BACKGROUND

Background on this litigation is presented in the court's previous opinion and summarized and supplemented herein.  *See id.* at __, 470 F. Supp. at 1354–56.

Contested in this litigation (the "Scope Ruling") is *Antidumping and Countervailing Duty Orders on Aluminum Extrusions From the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc., and Columbia Aluminum Products Door Thresholds* (Int'l Trade Admin. Dec. 19, 2018) (Rem. P.R. Doc. 39) ("*Scope Ruling*").[1]

Commerce issued the antidumping duty and countervailing duty orders pertinent to this litigation (the "Orders") in May 2011.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

Columbia submitted a "Scope Ruling Request" to Commerce on March 14, 2018, describing therein, and in a supplemental response to Commerce, ten models of door

---

[1] All citations to documents from the administrative record are to public documents.  References cited as "P.R. Doc. __" are to documents on the original agency record; references cited as "Rem. P.R. Doc. __" are to documents placed on the record during the Department's redetermination proceeding.

thresholds.  *Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce re:*

*Aluminum Extrusions from the People's Republic of China: Scope Ruling Request for Columbia*

*Aluminum Products, LLC* (Mar. 14, 2018) (Rem. P.R. Doc. 1) ("*Scope Ruling Request*");

*Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce re: Aluminum Extrusions*

*from the People's Republic of China: Supplement to Columbia Aluminum Products, LLC's Scope*

*Ruling Request* 4–6 (July 10, 2018) (Rem. P.R. Doc. 10) ("*Supplement to Scope Ruling*

*Request*").  As described in the Scope Ruling Request, each door threshold is an

assembly consisting of various components, including a component fabricated from an

aluminum extrusion and various components that are not made of aluminum, e.g.,

components made of plastic or wood.  *Scope Ruling Request* 1–3.

Commerce issued the Scope Ruling on December 19, 2018, in response to

Columbia's Scope Ruling Request, and the requests of Worldwide Door Components,

Inc. and MJB Wood Group, Inc., each of which also sought a scope ruling on assembled

door thresholds.  *Scope Ruling* 1.  The Scope Ruling concluded that the aluminum

extrusion component within each of Columbia's door thresholds, and within those of

the other two requestors, are subject to the Orders but that the non-aluminum

components are not.  *Id*. at 37–38.

Columbia brought this action to contest the Scope Ruling on January 18, 2019.

Summons, ECF No. 1; Compl., ECF No. 3.  The Aluminum Extrusions Fair Trade

Committee, which was the petitioner in the antidumping and countervailing duty

investigations resulting in the Orders, and Endura Products, Inc., a domestic producer

of door thresholds, are defendant-intervenors.  Order (Feb. 19, 2019), ECF No. 16.

    In response to Columbia's motion for judgment on the agency record, the court

issued its Opinion and Order remanding the Scope Ruling to Commerce for

reconsideration.  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1362.  Commerce filed its

decision upon remand ("Remand Redetermination") on December 23, 2020.  *Final*

*Results of Redetermination Pursuant to Ct. Remand* (Dec. 23, 2020), ECF No. 48-1 ("*Remand*

*Redetermination*").  Columbia filed comments in opposition.  Pl. Columbia Alum. Prods.,

LLC's Comments on Commerce's Final Remand Redetermination (Feb. 1, 2021), ECF

No. 52 ("Columbia's Comments").  Defendant-Intervenors filed comments in support of

the Remand Redetermination.  Def.-Int.'s Comments on Final Results of

Redetermination Pursuant to Ct. Remand (Feb. 1, 2021), ECF No. 53 ("Def.-Int.'s

Comments").  Defendant responded to the comment submissions.  Def.'s Resp. to

Comments on Remand Redetermination (Feb. 18, 2021), ECF No. 55 ("Def.'s Resp.").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

    The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[2]

Among the decisions that may be contested according to Section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing the Scope Ruling, the court must set aside any

determination, finding, or conclusion found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

## B. Methodology for Scope Determinations

The Department's regulations provide that "in considering whether a particular

product is included within the scope of an order . . . the Secretary [of Commerce] will

take into account the following: (1) the descriptions of the merchandise contained in the

petition, the initial investigation, and the determinations of the Secretary (including

prior scope determinations) and the [International Trade] Commission."  19 C.F.R.

§ 351.225(k)(1).[3]  The provision is not properly read to identify the *only* sources of

---

[2] Citations to the United States Code are to the 2012 edition.  Citations to the Code of Federal Regulations are to the 2020 edition unless otherwise noted.

[3] If the "criteria" of § 351.225(k)(1) "are not dispositive, the Secretary will further consider: (i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).

information Commerce is permitted to consider.  As a fundamental matter, the

Department's inquiry must center on the scope language of the antidumping or

countervailing duty order, for the Department's role in issuing a scope ruling is to

interpret, not modify, the scope language.  *Duferco Steel, Inc. v. United States*, 296 F.3d

1087, 1095 (Fed. Cir. 2002) ("*Duferco*") ("Commerce cannot interpret an antidumping

order so as to change the scope of that order, nor can Commerce interpret an order in a

manner contrary to its terms." (internal quotation marks and citation omitted)).

Moreover, to be sustained upon judicial review, the determination must be supported

by the record evidence considered on the whole.  This necessarily requires

consideration of the record information contained in the scope ruling request, which

ordinarily will include, *inter alia*, "[a] detailed description of the product, including its

technical characteristics and uses."  19 C.F.R. § 351.225(c)(1)(i).

### C. The Scope Language of the Orders and the Court's Decision in *Columbia I*

The relevant scope language, which is the same in both Orders, applies generally

to "aluminum extrusions which are shapes and forms, produced by an extrusion

process, made from aluminum alloys having metallic elements corresponding to the

alloy series designations published by The Aluminum Association commencing with

the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body

equivalents)."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  Such

extrusions may be "produced and imported in a wide variety of shapes and forms,"

and, after extrusion, may be subjected to drawing and to further fabrication and

finishing.  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654.  It is

uncontested that the component in each of Columbia's door thresholds that is fabricated

from an aluminum extrusion is made of an aluminum alloy identified in the scope

language of the Orders.  *See Remand Redetermination* 22.  The scope language also

provides that:

> [S]ubject extrusions may be identified with reference to their end use, such
> as fence posts, electrical conduits, door thresholds, carpet trim, or heat
> sinks (that do not meet the finished heat sink exclusionary language
> below).  Such goods are subject merchandise if they otherwise meet the
> scope definition, regardless of whether they are ready for use at the time
> of importation.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  In addition to a

good that is itself an aluminum extrusion, the scope language of the Orders, by

operation of a "subassemblies" provision, potentially brings within the scope of the

Orders an assembled good that contains one or more aluminum extrusions as parts.

The pertinent scope language and context are as follows:

> Subject aluminum extrusions may be described at the time of importation
> as parts for final finished products that are assembled after importation,
> including, but not limited to, window frames, door frames, solar panels,
> curtain walls, or furniture.  Such parts that otherwise meet the definition
> of aluminum extrusions are included in the scope.  The scope includes the
> aluminum extrusion components that are attached (*e.g.,* by welding or

fasteners) to form subassemblies, *i.e.*, partially assembled merchandise
unless imported as part of the finished goods 'kit' defined further below.[4]
The scope does not include the non-aluminum extrusion components of
subassemblies or subject kits.

*AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.  The scope also

contains a "finished merchandise" exclusion for "finished merchandise containing

aluminum extrusions as parts that are fully and permanently assembled and completed

at the time of entry, such as finished windows with glass, doors with glass or vinyl,

picture frames with glass pane and backing material, and solar panels."  *AD Order*, 76

Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  In the Scope Ruling, Commerce

concluded that it was unnecessary for it to consider whether Columbia's door

_____

[4] The "finished goods kit exclusion" reads as follows:

The scope also excludes finished goods containing aluminum extrusions
that are entered unassembled in a "finished goods kit."  A finished goods
kit is understood to mean a packaged combination of parts that contains,
at the time of importation, all of the necessary parts to fully assemble a
final finished good and requires no further finishing or fabrication, such
as cutting or punching, and is assembled "as is" into a finished product.
An imported product will not be considered a "finished goods kit" and
therefore excluded from the scope of the investigation merely by
including fasteners such as screws, bolts, *etc.* in the packaging with an
aluminum extrusion product.

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76
Fed. Reg. 30,650, 30,651 (May 26, 2011); *Aluminum Extrusions from the People's Republic of
China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (May 26, 2011). Columbia
does not argue that the finished goods kit exclusion applies to its door thresholds.

thresholds satisfied the requirements of the finished merchandise exclusion.  Commerce

reasoned that Columbia's door thresholds were expressly identified in the scope

language as "door thresholds" and as "parts for final finished products that are

assembled after importation, including, but not limited to . . . door frames." *Scope*

*Ruling* 33.

The court held in *Columbia I* that Commerce misread the scope language in

concluding that the finished merchandise exclusion was irrelevant to its analysis.

44 CIT at __, 470 F. Supp. 3d at 1360.  Commerce decided that each of Columbia's

imported door thresholds is "partially assembled merchandise" described by the

"subassemblies" provision because it contains an aluminum extrusion as a part and

because it is produced to be assembled into a door frame or what Commerce termed a

"door unit."  *Scope Ruling* 33.  Commerce cited the scope language references to door

thresholds and parts of door frames in concluding that the finished merchandise

exclusion was inapplicable.  *See id.* at 33–34.  Commerce overlooked that the subject of

the sentence of the scope language referring to "door thresholds" is "subject *extrusions*"

and, similarly, that the subject of the sentence referring to "parts for final finished

products . . . including . . . door frames" is, similarly, "subject aluminum *extrusions*."  *See*

*AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.  The latter

sentence is confined specifically to extrusions "described at the time of importation as

parts for final finished products," and the following sentence clarifies that "[s]uch parts

that *otherwise meet the definition of aluminum extrusions* are included in the scope."  *AD*

*Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added).

The scope language defines aluminum extrusions as "shapes and forms, produced by

an extrusion process."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg.

at 30,653.  The extruded aluminum components in Columbia's door thresholds are

described by these words, but the assembled door thresholds are not.  Logically, an

article cannot be both an "extrusion" and an assembly containing an extrusion as one

part among several other parts that are not aluminum extrusions.  As *Columbia I*

observed, "according to the uncontested facts, Columbia's door thresholds are not

'aluminum extrusions' at the time of importation; rather, they are door thresholds that

contain an aluminum extrusion as a component in an assembly."  44 CIT at __, 470 F.

Supp. 3d at 1357.  The court ordered Commerce to reconsider its decision and

specifically to consider whether the finished merchandise exclusion applies in this case.

**D. The Remand Redetermination Reaches a Finding or Inference that Is Contradicted by Record Evidence**

In the Remand Redetermination, Commerce disagreed that the finished

merchandise exclusion was relevant to its analysis.  Under protest, Commerce

proceeded to address the issue of whether the finished merchandise exclusion applied

to Columbia's imported door thresholds.[5]  Commerce concluded that Columbia's door

thresholds are an "intermediate product" and "partially assembled merchandise" for

purposes of the subassemblies provision in the Orders.  *Remand Redetermination* 43.

It concluded, further, that the articles did not qualify for the finished merchandise

exclusion, considering them to be parts of what it termed "door units" (containing

"additional parts, such as door jambs, a door panel, glass, hinges, weatherstripping, and

other hardware parts") rather than finished merchandise.  *Id.* at 44 (explaining that

"[t]he record evidence submitted by the petitioner and Endura indicates that door 'pre-

hangers' obtain all of the components necessary to assemble an entire door unit that is

subsequently installed in a building.") (footnote omitted).

---

[5] In disagreeing with, and protesting, the court's ruling, Commerce relies upon certain judicial decisions, none of which involved the products at issue in this case. Commerce states in the Remand Redetermination that "we believe that the Federal Circuit's holdings in *Meridian* and *Whirlpool* (which were not addressed by the Court in the *Remand Order*) are instructive and support Commerce's Final Scope Ruling."  *Final Results of Redetermination Pursuant to Ct. Remand* 11 (Dec. 23, 2020), ECF No. 48-1 ("*Remand Redetermination*") (citing *Meridian Prods., LLC v. United States*, 890 F.3d 1272 (Fed. Cir. 2018) and *Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018)). These decisions by the Court of Appeals for the Federal Circuit do not support the Department's position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a "subassembly."  *See Remand Redetermination* 15 (in which Commerce reasons that "because we find the door thresholds are subassemblies under the general scope language, we also find that they do not meet the exclusion criteria for 'finished merchandise' and are therefore covered by the scope of the *Orders*.").

In the Remand Redetermination, Commerce reasoned that goods falling within the subassemblies provision of the Orders cannot also be considered goods qualifying for the finished merchandise exclusion, i.e., Commerce considers these two categories to be mutually exclusive.  *See Remand Redetermination* 17–22.  Thus, Commerce employed an analysis under which any goods it deems to be described by the subassemblies provision are, *per se*, ineligible for the finished merchandise exclusion.  The court need not decide whether this analysis is a correct interpretation of the scope language, for even if it is, the Department's decision still must be remanded to Commerce because it relies upon an impermissible finding or inference.  Specifically, in rejecting the argument that the finished merchandise exclusion described Columbia's door thresholds, Commerce impermissibly relied on certain other record evidence submitted by the petitioner and Endura, as follows:

> Moreover, the record evidence submitted by the petitioner and Endura indicates that the completed door unit is highly customizable, and may require additional cutting and machining of the door threshold. Door pre-hangers may further customize door thresholds, along with other door unit components, before final assembly of the door unit. Although door thresholds are available in a variety of standard lengths, they are generally manufactured to a longer length that is cut or machined to meet the requirements of a specific order.  The evidence submitted by the petitioner and Endura also indicates that in the remodeling market segment for door thresholds, thresholds can be sold as parts of pre-hung door units or as replacement parts for finished door assemblies. Thresholds sold by retailers in the remodeling segment often require further cutting and sizing to meet the specific requirements of the door

> assembly into which the thresholds are incorporated.  Thus, we find that
> the information submitted by the petitioner and Endura is consistent with
> and supports our continued determination that Columbia's door
> thresholds are not, in and of themselves, a final finished product, but
> rather, an intermediate product that is meant to be incorporated into a
> larger downstream product, which is the finished merchandise.

*Id*. at 44–45 (footnotes omitted). The quoted language infers (but does not state

unambiguously) that the specific door thresholds at issue in this proceeding are so

designed and manufactured as to require cutting or machining prior to incorporation

into a door frame or other structure.  But whether the court considers this language to

be a finding or an inference does not matter: in either case, it is contradicted by the

record evidence contained in the Scope Ruling Request and the supplement thereto.

Commerce does not cite any record evidence to support a finding or inference that

Columbia's imported door thresholds, in particular, are so designed and produced as to

require cutting or machining prior to incorporation into a door frame or other structure.

In its comments to the court, Columbia states that "[e]vidence that Columbia

submitted during the original scope ruling, including videos, demonstrate[s] that

Columbia's assembled thresholds *cannot* be cut to custom sizes because doing so

destroys the assembled thresholds, rendering them unuseable [*sic*]."  Columbia's

Comments 8 (citing *Supplement to Scope Ruling Request* 11–12 & Ex. 11).  In the cited

supplement to its Scope Ruling Request, Columbia stated that the thresholds at issue

"are made for standard size doors" and that "[t]o be explicitly clear, Columbia's

thresholds in this Scope Request cannot be cut to be utilized for different standard door

sizes. The threshold would not be functional if cut." *Supplement to Scope Ruling*

*Request* 11. Citing a video attached as an exhibit to the submission showing the effects

of cutting, Columbia stated that "[o]nce cut, the nailing block within the threshold is

gone. Without a nailing block, the threshold has no way to be utilized in a door." *Id*. at

11–12 (citing *id.* at Ex. 11). Columbia added that "once cut Columbia's finished

thresholds no longer seal against water or insulate air." *Id*. at 12. In another exhibit to

that submission, Columbia attached letters from two of its customers to support its

statement that its thresholds are ready for use without further processing. *Id*. at 7

(citing *id.* at Ex. 6).

        In its supplement to its Scope Ruling Request, Columbia also stated that it

manufactures in the United States "certain thresholds that are manufactured intended

to be cut by the end user." *Id*. at 8 n.23, *see id.* at 11 (explaining that these "cuttable

thresholds," which it describes as similar to Endura's sills, "give end-users

customizable options and excess materials. As a result, these thresholds are more

expensive due to their ability to fit multiple sized standard door sizes and use of more

materials."). Columbia contrasted these with the thresholds at issue. *Id*. at 11

("However, the finished merchandise subject to Columbia's Scope Request cannot

undergo any cutting or fabrication after importation without losing the functionality of

the product.").

     In their comments on the Remand Redetermination, defendant-intervenors state

that "[w]hile door thresholds are available in a variety of standard lengths, they are

*generally* manufactured to a longer length that is cut or machined once the order-specific

requirements are known."  Def.-Int.'s Comments 10 (emphasis added) (citing their own

submissions on the record).  Defendant-intervenors conclude from this statement that

"[b]ecause of the need to customize the threshold to match the many specific

requirements of the particular door assembly, it would not make economic sense as an

import model to finish the customization of the threshold prior to importation and it is

likely that imported door thresholds products *generally* are further cut to size either at

importers' domestic facilities or at pre-hangers' facilities."  *Id.* (emphasis added) (citing

their own submissions on the record).

     The evidence from the petitioner and Endura that door thresholds "generally"

are further cut or machined to size does not address the critical question of fact the

court has identified, which pertains to the door thresholds at issue in this litigation.

That issue bears on the language in the finished merchandise exclusion referring to

"finished merchandise containing aluminum extrusions as parts that are fully and

permanently assembled *and completed* at the time of entry." *AD Order*, 76 Fed. Reg. at

30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added).

In summary, the court is not aware of any evidence on the administrative record

supporting a finding or inference that the specific door thresholds at issue in this

litigation are so designed and produced as to require cutting or machining prior to

incorporation into a door frame or other structure. Moreover, Commerce has not

brought any such evidence to the court's attention in the Remand Redetermination and

appears to disregard record evidence to the contrary. In the second remand

proceeding, Commerce must make a factual determination to resolve this issue based

on a consideration of the record evidence, viewed in the entirety.

### E. Commerce Must Reconsider the Applicability of the Finished Merchandise Exclusion Based on the Exemplars Stated Therein

The scope exclusion for finished merchandise includes exemplars. *AD Order*,

76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (excluding from the scope of

the Orders "finished merchandise containing aluminum extrusions as parts that are

fully and permanently assembled and completed at the time of entry, such as finished

windows with glass, doors with glass or vinyl, picture frames with glass pane and

backing material, and solar panels"). In the Remand Redetermination, Commerce

reasoned, as to the exemplars, that "[w]e find that these product examples do not

constitute subassemblies within the meaning of the general scope language, but, rather,

are examples of fully and permanently assembled and completed products." *Remand*

*Redetermination* 18–19.  Commerce added that "[a]ccordingly, an assembled aluminum

extrusion door frame without glass could be considered a subassembly, and therefore

covered by the scope, thus falling short of the final finished door with glass which

would be excluded." *Id.* at 19.

 After considering whether the door thresholds at issue in this case either are, or

are not, so designed and produced as to require cutting or machining prior to

incorporation into a larger structure, Commerce must decide anew whether the finished

merchandise exclusion applies in this case.  It then will be necessary for Commerce to

address the effect of the exemplars, including, in particular, the exemplar for "doors

with glass or vinyl."

 As described by Commerce in the Remand Redetermination, "a final finished

door with glass," *Remand Redetermination* 19, would satisfy the requirements of the

finished merchandise exclusion.  The product identified in the "door" exemplar—a

door with glass or vinyl—in the finished merchandise exclusion is closely similar to a

complete, assembled door threshold consisting of an aluminum extrusion and non-

aluminum components.  Both are assemblies containing one or more aluminum

extrusions, and both are components of what Commerce described in the Remand

Redetermination as a "door unit." *See Remand Redetermination* 44 (describing the various parts of a door unit). Commerce fails to provide a reasoned explanation in the Remand Redetermination why a door threshold is a "subassembly" ineligible for the finished merchandise exclusion but a door with glass or vinyl is not. In this regard, the court notes that the exemplar in the finished merchandise exclusion explicitly refers to "*doors* with glass or vinyl," not "door units" or a similar such term referring to a combination consisting of a door, a door frame, and all other parts such as hinges, latches, jambs, and other hardware. *See AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. The role of Commerce in a scope ruling proceeding is to interpret scope language in an order, not to change it. *Duferco*, 296 F.3d at 1095.

Commerce reasoned, further, that "[a] subassembly is merchandise which is designed for the sole purpose of becoming part of a larger whole," *Remand Redetermination* 24, and that each of Columbia's assembled door thresholds, which "must work in tandem with other components to be functional," *id.* at 23 (citation omitted), and is "a component of a larger downstream product," *id.* at 24, therefore cannot qualify for the finished merchandise exclusion. This is so, according to Commerce, even if the article requires no further fabrication or assembly to perform its function. *Id.* at 18 ("Further, the fact that the subassembly could be described in its own right with reference to its end use, or that such subassembly requires no further

fabrication or assembly to perform its function as a subassembly, does not mean that it

will constitute finished merchandise under the exclusion.").

Commerce fails to reconcile its analysis with certain of the exemplars the finished

merchandise exclusion specifically identifies.  If an assembled door threshold

containing an aluminum extrusion is within the class of goods identified by the

reference in the scope language to "subassemblies, i.e., partially assembled

merchandise" because it is designed to become part of a larger whole, e.g., a door unit

or other structure, then so is a "door with vinyl or glass."  The same can be said for a

"finished window with glass."  Such a good is also "designed for the sole purpose" of

being incorporated into a part of a larger structure, such as a wall or a dormer, that, like

a door unit, is itself part of an even larger whole, i.e., a building.

In the Remand Redetermination, Commerce declined to consider the similarities

between assembled door thresholds and the exemplars in the finished merchandise

exclusion, including, specifically, those referring to doors and windows.  Commerce

reasoned that:

> [T]hese exemplars are defined by the scope as finished merchandise that,
> in and of themselves, satisfy the finished merchandise exclusion.  Because
> they are themselves finished merchandise, they are not intermediary
> products to finished merchandise that might qualify as a subassembly.
> There is no need to further analyze whether the enumerated products in
> the finished merchandise exclusion work in conjunction with other
> products, and no requirement that, for example, a window with glass or a

> door with glass or vinyl be assembled into a house to satisfy the finished
> merchandise exclusion.  In contrast, because door thresholds are not
> specifically enumerated examples of finished merchandise, Commerce
> must undertake an analysis of whether they satisfy the criteria for the
> finished merchandise exclusion.  As explained above, we have determined
> that Columbia's door thresholds are subassemblies meant to be
> incorporated into a larger downstream product and, consequently, do not
> satisfy the criteria for the finished merchandise exclusion.

*Id.* at 46.  This reasoning is based on a serious misinterpretation of the scope language

setting forth the finished merchandise exclusion.  Contrary to the express terms of that

exclusion, Commerce interprets the exemplars therein as separate, individual exclusions

rather than as what they plainly are.  They are exemplars, as shown by the use of the

words "such as."  *See AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654

(excluding "finished merchandise containing aluminum extrusions as parts that are

fully and permanently assembled and completed at the time of entry, *such as* finished

windows with glass, doors with glass or vinyl, picture frames with glass pane and

backing material, and solar panels" (emphasis added)).  Here again, Commerce

attempts to rewrite the scope language, contrary to plain meaning and the principle

enunciated in *Duferco*.  *See* 296 F.3d at 1095.

    The limitation on the finished merchandise exclusion Commerce attempts to

impose is contrary to the exemplars for doors and windows that the scope language

used for the purpose of illustration.  Commerce provides no convincing explanation of

why goods that are, in the Department's words, "designed for the sole purpose of becoming part of a larger whole," *Remand Redetermination* 24, or "meant to be incorporated into a larger downstream product," *id.* at 46, must be disqualified from the finished merchandise exclusion by that characteristic alone, despite the exemplars of products that also are designed for the sole purpose of becoming part of a larger whole yet are listed in the scope language as examples of products that satisfy the terms of the finished merchandise exclusion.

Commerce attempts to justify its overly-narrow interpretation of the finished merchandise exclusion by alluding to the intent as expressed in "the Petition and related documents." *Remand Redetermination* 19–20; *see* 19 C.F.R. § 351.225(k)(1). Commerce states that "[t]hrough their explanation and revisions, the petitioners clearly and consistently expressed their intent to exclude from the *Orders* certain aluminum extrusions imported as part of a kit, but include in the *Orders* other aluminum extrusions that are attached to form subassemblies that are not imported as part of a kit." *Id.* at 20. This reasoning is also unsound. The finished goods kit exclusion applies only to goods imported in unassembled form, and the specific mention of this exclusion in the subassemblies provision logically parallels the description of subassemblies as "partially assembled merchandise." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. The finished merchandise exclusion, in contrast, applies only to

goods that are imported in fully assembled form.  Each must be interpreted according to the requirements stated therein.  That a good be fully assembled at the time of importation is a requirement of the finished merchandise exclusion.  According to plain meaning and logic, it cannot also be a disqualification for the finished merchandise exclusion.

In summary, the court cannot sustain the Remand Redetermination, which relies upon a factual finding or inference that is contradicted by the record evidence pertaining specifically to Columbia's imported door thresholds.  The court directs that Commerce, in a new decision, reconsider in the entirety the decision reached in the Remand Redetermination as to the finished merchandise exclusion and reach a new determination that complies with the instructions in this Opinion and Order.  In so doing, Commerce must address the specific factual issue the court has identified and ensure that all of its findings are supported by substantial evidence on the record.

### III.  CONCLUSION AND ORDER

Upon consideration of the Remand Redetermination and all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Remand Redetermination is remanded to Commerce for reconsideration in light of this Opinion and Order; it is further

**Court No. 19-00013**                                                      **Page 24**

    **ORDERED** that Commerce, within 90 days from the date of issuance of this Opinion and Order, shall submit a second redetermination upon remand ("Second Remand Redetermination") that complies with this Opinion and Order; it is further

    **ORDERED** that plaintiff and defendant-intervenors shall have 30 days from the filing of the Second Remand Redetermination in which to submit comments to the court; and it is further

    **ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 15 days from the date of filing of the last comment to submit a response.

                                       /s/ Timothy C. Stanceu
                                         Timothy C. Stanceu, Judge

Dated: September 14, 2021
        New York, New York