A-570-967
C-570-968
Remand
Slip Op. 21-116
**Public Document**
AD/CVD Operations, OVI:  MJH

***Columbia Aluminum Products, LLC, v. United States***
**Court No. 19-00013, Slip. Op. 21-116 (CIT September 14, 2021)**

**Final Results of Redetermination
Pursuant to Court Remand**

## I.      Summary

The Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the opinion and second remand order of the United States Court of International Trade (CIT or the Court) in *Columbia Aluminum Products, LLC v. United States*, Court No. 19-00013, Slip Op. 21-116 (September 14, 2021) (*Columbia II*).  This action arises out of Commerce's Final Scope Ruling that certain door thresholds imported by Columbia Aluminum Products (Columbia)[1] fall within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (China).[2]  On December 23, 2020, pursuant to the CIT's first remand order in *Columbia I*,[3] Commerce issued its Final Remand Redetermination, in which Commerce continued to find that Columbia's door

---

[1] *See* Memorandum, "Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China:  Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc., and Columbia Aluminum Products Door Thresholds," dated December 19, 2018 (Final Scope Ruling).

[2] *See Aluminum Extrusions from the People's Republic of China:  Antidumping Duty Order*, 76 FR 30650 (May 26, 2011) (*Antidumping Duty Order*); and *Aluminum Extrusions from the People's Republic of China:  Countervailing Duty Order*, 76 FR 30653 (May 26, 2011) (*Countervailing Duty Order*) (collectively, the *Orders*).

[3] *See Columbia Aluminum Products, LLC v. United States,* 470 F. Supp. 3d 1353 (CIT August 27, 2020) (*Columbia I*).

thresholds were included in the scope of the *Orders* as subassemblies and, therefore, failed to satisfy the requirements for the finished merchandise exclusion.[4]

In *Columbia II,* the Court determined that Commerce impermissibly based its analysis in the Final Remand Redetermination on an inference that was contradicted or unsupported by other information on the record.[5]  The CIT directed Commerce to reconsider whether Columbia's door thresholds required cutting or machining prior to incorporation into another product, and to determine whether Columbia's door thresholds qualified for the finished merchandise exclusion.[6]

Based on the Court's instructions, we have reconsidered whether the door thresholds meet the definition of finished merchandise set forth in the *Orders*.  As described below, in this final redetermination, to comply with the CIT's second remand order, we have continued to determine under respectful protest,[7] that Columbia's door thresholds are excluded from the *Orders* as finished merchandise.

## II.     Scope of the *Orders*

The merchandise covered by the *Orders* is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents).  Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight.  The subject merchandise made from aluminum alloy with an

---

[4] *See Final Results of Redetermination Pursuant to Court Remand, Columbia Aluminum Products, LLC v. United States*, Court No., 19-00013, Slip. Op. 20-129 (CIT August 27, 2020), dated December 23, 2020 (*Final Remand Redetermination*).
[5] *See Columbia II* at 2, 11-17, 23.
[6] *Id.* at 2, 17, 23.
[7] *See Viraj Group v. United States*, 343 F. 3d 1371 (Fed. Cir. 2003).

Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight.  The subject merchandise made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight.  The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060.

Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods.

Aluminum extrusions that are drawn subsequent to extrusion (drawn aluminum) are also included in the scope.

Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication.  The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (*i.e.*, without any coating or further finishing), brushed, buffed, polished, anodized (including brightdip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, *i.e.*, prepared for assembly.  Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun.  The subject merchandise includes aluminum extrusions that are finished (coated, painted, *etc.*), fabricated, or any combination thereof.

3

Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture.  Such parts that otherwise meet the definition of aluminum extrusions are included in the scope.  The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below.  The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below).  Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

The following aluminum extrusion products are excluded: aluminum extrusions made from aluminum alloy with an Aluminum Association series designations commencing with the number 2 and containing in excess of 1.5 percent copper by weight; aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 5 and containing in excess of 1.0 percent magnesium by weight; and aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 7 and containing in excess of 2.0 percent zinc by weight.

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.  The scope also excludes finished goods containing aluminum

extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the *Orders* merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

The scope also excludes aluminum alloy sheet or plates produced by other than the extrusion process, such as aluminum products produced by a method of casting. Cast aluminum products are properly identified by four digits with a decimal point between the third and fourth digit. A letter may also precede the four digits. The following Aluminum Association designations are representative of aluminum alloys for casting: 208.0, 295.0, 308.0, 355.0, C355.0, 356.0, A356.0, A357.0, 360.0, 366.0, 380.0, A380.0, 413.0, 443.0, 514.0, 518.1, and 712.0. The scope also excludes pure, unwrought aluminum in any form.

The scope also excludes collapsible tubular containers composed of metallic elements corresponding to alloy code 1080A as designated by the Aluminum Association where the tubular container (excluding the nozzle) meets each of the following dimensional characteristics:

(1) length of 37 millimeters ("mm") or 62 mm,

(2) outer diameter of 11.0 mm or 12.7 mm, and

(3) wall thickness not exceeding 0.13 mm.

Also excluded from the scope of the *Orders* are finished heat sinks. Finished heat sinks are fabricated heat sinks made from aluminum extrusions the design and production of which are

organized around meeting certain specified thermal performance requirements and which have

been fully, albeit not necessarily individually, tested to comply with such requirements.

Imports of the subject merchandise are provided for under the following categories of the

Harmonized Tariff Schedule of the United States (HTSUS):  6603.90.8100, 7616.99.51,

8479.89.94, 8481.90.9060, 8481.90.9085, 9031.90.9195, 8424.90.9080, 9405.99.4020,

9031.90.90.95, 7616.10.90.90, 7609.00.00, 7610.10.00, 7610.90.00, 7615.10.30, 7615.10.71,

7615.10.91, 7615.19.10, 7615.19.30, 7615.19.50, 7615.19.70, 7615.19.90, 7615.20.00,

7616.99.10, 7616.99.50, 8479.89.98, 8479.90.94, 8513.90.20, 9403.10.00, 9403.20.00,

7604.21.00.00, 7604.29.10.00, 7604.29.30.10, 7604.29.30.50, 7604.29.50.30, 7604.29.50.60,

7608.20.00.30, 7608.20.00.90, 8302.10.30.00, 8302.10.60.30, 8302.10.60.60, 8302.10.60.90,

8302.20.00.00, 8302.30.30.10, 8302.30.30.60, 8302.41.30.00, 8302.41.60.15, 8302.41.60.45,

8302.41.60.50, 8302.41.60.80, 8302.42.30.10, 8302.42.30.15, 8302.42.30.65, 8302.49.60.35,

8302.49.60.45, 8302.49.60.55, 8302.49.60.85, 8302.50.00.00, 8302.60.90.00, 8305.10.00.50,

8306.30.00.00, 8414.59.60.90, 8415.90.80.45, 8418.99.80.05, 8418.99.80.50, 8418.99.80.60,

8419.90.10.00, 8422.90.06.40, 8473.30.20.00, 8473.30.51.00, 8479.90.85.00, 8486.90.00.00,

8487.90.00.80, 8503.00.95.20, 8508.70.00.00, 8515.90.20.00, 8516.90.50.00, 8516.90.80.50,

8517.70.00.00, 8529.90.73.00, 8529.90.97.60, 8536.90.80.85, 8538.10.00.00, 8543.90.88.80,

8708.29.50.60, 8708.80.65.90, 8803.30.00.60, 9013.90.50.00, 9013.90.90.00, 9401.90.50.81,

9403.90.10.40, 9403.90.10.50, 9403.90.10.85, 9403.90.25.40, 9403.90.25.80, 9403.90.40.05,

9403.90.40.10, 9403.90.40.60, 9403.90.50.05, 9403.90.50.10, 9403.90.50.80, 9403.90.60.05,

9403.90.60.10, 9403.90.60.80, 9403.90.70.05, 9403.90.70.10, 9403.90.70.80, 9403.90.80.10,

9403.90.80.15, 9403.90.80.20, 9403.90.80.41, 9403.90.80.51, 9403.90.80.61, 9506.11.40.80,

9506.51.40.00, 9506.51.60.00, 9506.59.40.40, 9506.70.20.90, 9506.91.00.10, 9506.91.00.20,

9506.91.00.30, 9506.99.05.10, 9506.99.05.20, 9506.99.05.30, 9506.99.15.00, 9506.99.20.00, 9506.99.25.80, 9506.99.28.00, 9506.99.55.00, 9506.99.60.80, 9507.30.20.00, 9507.30.40.00, 9507.30.60.00, 9507.90.60.00, and 9603.90.80.50.

The subject merchandise entered as parts of other aluminum products may be classifiable under the following additional Chapter 76 subheadings: 7610.10, 7610.90, 7615.19, 7615.20, and 7616.99, as well as under other HTSUS chapters.  In addition, fin evaporator coils may be classifiable under HTSUS numbers: 8418.99.80.50 and 8418.99.80.60.  While HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the *Orders* is dispositive.

## III.    Background

Columbia's door thresholds contain a combination of an aluminum extrusion, a polyvinyl chloride (PVC) extrusion, an insert bar, and an extruded PVC substrate, depending on the specific model.[8]  In the Final Scope Ruling on Columbia's door thresholds, we found that the door thresholds were covered by the scope of the *Orders* based on the scope language and sources described in 19 CFR 351.225(k)(1).[9]  Specifically, we determined that Columbia's door thresholds fell under the general scope provisions covering parts for final finished products (*i.e.*, parts for doors) that are assembled after importation; identified subject extrusions with reference to their end-use with door thresholds listed as a specific example; and covered subassemblies.[10]  After finding that the door thresholds were covered by the general scope language of the *Orders*, we determined that the finished merchandise exclusion was inapposite.[11]

---

[8] *See* Columbia's Letter, "Aluminum Extrusions from the People's Republic of China:  Scope Ruling Request for Columbia Aluminum Products, LLC," dated March 14, 2018 at 3.
[9] *See* Final Scope Ruling at 32-37.
[10] *Id.* at 33-34.
[11] *Id.* at 35-36.

Columbia challenged Commerce's scope rulings and, on August 27, 2020, in *Columbia I*, the CIT held that Commerce misinterpreted the factors specified in 19 CFR 351.225(k)(1) and the scope provisions covering parts for final finished products and identifying subject extrusions with reference to their end-use.[12]  Although the Court acknowledged that the scope includes subassemblies composed of aluminum and non-aluminum components,[13] it did not explicitly rule on Commerce's finding that Columbia's door thresholds are subassemblies.[14]  The Court remanded Commerce's scope ruling for consideration of whether the finished merchandise exclusion applies to Columbia's door thresholds.[15]

In the Final Remand Redetermination, Commerce continued to find that Columbia's door thresholds were included in the scope of the *Orders* as subassemblies.[16]  Commerce reasoned that the door thresholds were partially assembled, intermediate products that did not function on their own, but were designed to be incorporated into a larger downstream product, such as a door frame, completed door unit, or residential or commercial building.[17]  Because Commerce found that the door thresholds were subassemblies, it concluded that the finished merchandise exclusion was inapplicable.[18]

In *Columbia II*, the CIT ruled that Commerce impermissibly made findings in its Final Remand Redetermination which were based on an inference that was contradicted or unsupported by other information on the record.[19]  Specifically, in support of its conclusion that Columbia's door thresholds are not in and of themselves finished products, but intermediate

---

[12] *See Columbia Aluminum Products*, 470 F. Supp. 3d at 1356-1358.
[13] *Id.* at 1362.
[14] *Id.* at 1358.
[15] *Id.* at 1362.
[16] *See* Final Remand Redetermination at 22-27.
[17] *Id* at 23-24.
[18] *Id* at 26.
[19] *See Columbia II* at 2, 11-17, 23.

products incorporated into larger finished merchandise, Commerce cited record evidence stating that door thresholds generally require cutting and fabrication prior to installation.[20]  The CIT concluded that these statements inferred, but did not clearly state, that Columbia's door thresholds were also customizable intermediate products, and were contradictory to Columbia's characterization of its door thresholds as assemblies that are ready for use without further processing and incapable of being cut to custom sizes without destroying the thresholds' functionality.[21]  Because Commerce's determination cited this general characterization of door thresholds requiring further cutting or manufacturing, the CIT remanded Commerce's decision to reconsider its factual findings regarding whether Columbia's door thresholds require further processing before incorporation with other products.[22]

In *Columbia II*, the CIT also stated that the language of the finished merchandise exclusion lists "doors with glass or vinyl" – but not door units – as exemplars of finished merchandise.[23]  In the Final Remand Redetermination, Commerce concluded that the exemplars in the finished merchandise exclusion were not subassemblies because the scope specifically defined them as finished merchandise.[24]  As such, Commerce concluded that there was no need to further consider whether the enumerated examples of finished merchandise worked in conjunction with other products.[25]  The CIT reasoned that Commerce improperly interpreted the exemplars as an exclusive list, rather than examples of finished merchandise.[26]  The CIT also stated that Commerce had not sufficiently considered why "doors with glass or vinyl" – which, like door thresholds, were not part of a larger downstream product – could satisfy the finished

---

[20] *See* Final Remand Redetermination at 44-45.
[21] *See Columbia II* at 13-17.
[22] *Id* at 17.
[23] *Id* at 19.
[24] See Final Remand Redetermination at 18-19, 46.
[25] *Id.* at 46.
[26] *See Columbia II* at 21.

merchandise exclusion, but Columbia's door thresholds could not.[27]  Accordingly, the CIT directed Commerce on remand to determine whether Columbia's door thresholds qualified for the finished merchandise exclusion.[28]

On November 18, 2021, we released our Draft Results of Redetermination to interested parties.[29]  On November 29, 2021, we received comments from Columbia,[30] and the petitioner,[31] and Endura Products, Inc. (Endura).[32]  We respond to these comments below.  After considering these comments and the Court's opinion and analysis in *Columbia II,* we continue to find under respectful protest, that Columbia's door thresholds are excluded from the *Orders* as finished merchandise.

## IV.    Analysis Regarding the "Finished Merchandise Exclusion"

In remanding this issue to Commerce, the Court ordered Commerce to reconsider its determination that Columbia's door thresholds were within the scope of the *Orders*.  As discussed above, in both the Final Scope Ruling and Final Remand Redetermination, Commerce found that Columbia's door thresholds were subassemblies which were included in the scope of the *Orders*.[33]

However, in *Columbia II*, the Court found unpersuasive Commerce's determination that Columbia's door thresholds were subassemblies which must be further incorporated into a larger

---

[27] *Id.* at 18-22.

[28] *Id.* at 2, 18, 23.

[29] *See* Draft Results of Redetermination, *Columbia Aluminum Products, LLC, v. United States*, Court No. 19-00013, Slip. Op. 21-116 (CIT September 14, 2021), dated November 18, 2021 (Draft Results of Redetermination).

[30] *See* Columbia's Letter, "Comments on the Draft Results of Redetermination Pursuant to the Remand Order of the U.S. Court of International Trade in *Columbia Aluminum Products, LLC v. United States*, Court No. 19-00013, Slip Op. 21-116 (Ct. Int'l Trade Sept. 14, 2021)," dated November 29, 2021 (Columbia Draft Redetermination Comments).

[31] The petitioner is the Aluminum Extrusions Fair Trade Committee.

[32] *See* Petitioner and Endura's Letter, "Aluminum Extrusions from the People's Republic of China: Comments on Draft Results of Redetermination," dated November 29, 2021 (Petitioner and Endura Draft Redetermination Comments).

[33] *See* Final Scope Ruling at 34; *see also* Final Remand Redetermination at 22-24.

downstream product (*e.g.*, a door unit or door frame).  Specifically, the Court determined in *Columbia II* that record evidence did not support the conclusion that Columbia's door thresholds must undergo further cutting or fabrication in order to be incorporated into a completed product.[34]  The Court also held that Commerce misinterpreted the scope language in concluding that, because Columbia's door thresholds were intermediate products, rather than final finished goods in and of themselves, the finished merchandise exclusion was inapplicable.[35]  Thus, the Court disagreed with Commerce's finding that Columbia's door thresholds were subassemblies covered by the scope of the *Orders* and not excluded under the finished merchandise exclusion.

Although we disagree with the Court's interpretation of the scope language, consistent with the Court's opinion and analysis, we find, under respectful protest,[36] that Columbia's door thresholds are not subassemblies covered by the general scope language, and that they satisfy the criteria for the finished merchandise exclusion.  Specifically, the Court concluded that the record evidence does not support Commerce's finding that Columbia's door thresholds are subassemblies covered by the general scope language.[37]  The Court also directed us to consider whether Columbia's door thresholds satisfy the criteria of the finished merchandise exclusion, which provides:  "The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels."[38]  The Court stated that Columbia's door thresholds are similar to the exemplars provided in the finished merchandise exclusion – *e.g.*, doors with glass

---

[34] *See Columbia II* at 14-17.
[35] *Id.* at 17-23.
[36] *See Viraj Group Ltd.*, 343 F.3d at 1376-77.
[37] *See Columbia II* at 13-17.
[38] *See* the *Orders.*

11

or vinyl – in that the exemplars are also not incorporated into a larger downstream product such as a door unit or other structure.[39]   Accordingly, consistent with the Court's reasoning, we are finding, under respectful protest, that Columbia's door thresholds are finished merchandise excluded from the *Orders.*

## V.   Interested Party Comments on Draft Results of Redetermination

**Comment 1:   Whether Columbia's Door Thresholds are Subassemblies or Excluded from the Orders under the Finished Merchandise Exclusion**

*Petitioner and Endura Comments:*

- The petitioner and Endura acknowledge that Commerce conducted the Draft Results of Redetermination under protest.  However, the petitioner and Endura argue Commerce provided insufficient rationale in the Draft Results of Redetermination both to (1) support Commerce's disagreement with the Court's interpretation of the scope of the *Orders* and (2) explain the decision made in the Final Remand Redetermination in *Columbia I* that Columbia's door thresholds are subassemblies included within the scope of the *Orders.*[40]

- The petitioner and Endura argue that in both the Final Scope Ruling and in the Final Remand Redetermination in *Columbia I*, Commerce properly concluded that the merchandise in question are subassemblies which fail to meet exclusion from the *Orders* pursuant to the "finished merchandise provision" of the scope.[41]  The petitioner and Endura assert that in these Final Results of Redetermination, Commerce should reiterate to the Court that, contrary to analysis set forth in *Columbia II*, the merchandise in question are subassemblies that fail to meet exclusion as finished merchandise.[42]

---

[39] *See Columbia II* at 17-22.
[40] *See* Petitioner and Endura Draft Redetermination Comments at 2-3.
[41] *Id.* at 4.
[42] *Id.*

- The petitioner and Endura contend that in *Columbia II*, the Court has impermissibly substituted its judgment for that of the agency.  The petitioner and Endura argue that the definition of subassemblies adopted by Commerce in the Final Remand Redetermination in *Columbia I* is consistent with the analysis set forth by Commerce in response to *Meridian*.[43]

- The petitioner and Endura further contend that the Court's opinion in *Columbia II* improperly expands the finished merchandise exclusion of the *Orders* to read the subassembly language out of the scope.  The petitioner and Endura note that under the finished merchandise exclusion of the *Orders,* subassemblies are ineligible for exclusion.[44]  Moreover, the petitioner and Endura assert that the "exemplars" of excluded finished merchandise cited by the Court in *Columbia II* (*e.g*., finished windows with glass or doors with glass or vinyl) are themselves mentioned within the finished merchandise exclusion.  Therefore, in and of themselves, finished windows with glass or doors with glass or vinyl are "finished merchandise" which unlike door thresholds require no further analysis as to whether they are excluded under the finished merchandise exclusion of the *Orders*.[45]

- Because Columbia's door thresholds do not function on their own but rather as part of a completed door, the petitioner and Endura continue to maintain that door thresholds are not fully and completely assembled products at the time of importation.[46]  Further, the petitioner and Endura assert that door thresholds require further cutting and fabrication before these items can be incorporated into a finished door frame.[47]

---

[43] *Id*. at 4-5 (citing *Final Results of Redetermination Pursuant to Court Remand, Meridian Products LLC v. United States*, Court No. 13-00246, Slip Op, 19-5 (CIT January 14, 2019), dated May 15, 2019, at 30-31 (*Meridian*)).
[44] *See* Petitioner and Endura Draft Redetermination Comments at 5-8.
[45] *Id.* at 7-8.
[46] *Id* at 8-9.
[47] *Id.* at 9-10 (citing Petitioner and Endura's Letter, "Aluminum Extrusions from the People's Republic of China: Submission of Exhibits," dated September 4, 2018 at Exhibit 2).

- The petitioner and Endura conclude that by accepting Columbia's contention that its door thresholds require no further cutting or fabrication subsequent to their importation, the Court has impermissibly substituted its own judgment for that of Commerce. The petitioner and Endura further assert that the Court has inappropriately overlooked record evidence which establishes that door thresholds require customization and further cutting and fabrication.[48]

*Columbia Comments:*

- While Columbia agrees with the decision made by Commerce in the Draft Results of Redetermination that Columbia's door thresholds are finished merchandise excluded by the scope of the *Orders*, Columbia disputes Commerce's decision to issue those results "under respectful protest."[49] Columbia asserts that finding its door thresholds to be outside the scope of the *Orders* is the only result that is both consistent with the Court's instructions in *Columbia II*, and supported by record evidence.[50]

**Commerce's Position:**

As stated above, in the Final Scope Ruling and the Final Remand Redetermination in *Columbia I*, Commerce determined that Columbia's door thresholds are subassemblies covered by the scope of the *Orders* and, thus, do not satisfy the criteria of the finished merchandise exclusion.[51]

The Court determined in *Columbia II* that record evidence did not support Commerce's conclusion that Columbia's door thresholds are subassemblies because they must undergo further cutting or fabrication in order to be incorporated into a completed product.[52] Specifically, the

---

[48] *Id.* at 12-14.
[49] *See* Columbia Draft Redetermination Comments at 1-2.
[50] *Id.* at 2.
[51] *See* Final Scope Ruling at 32-37; *see also* Final Remand Redetermination at 22-27.
[52] *See Columbia II* at 14-17.

Court cited to Columbia's characterization of its door thresholds as assemblies that are ready for use without further processing and incapable of being cut to custom sizes without destroying the thresholds' functionality.[53]  However, the fact that the door thresholds themselves may not have undergone further cutting or fabrication was not central to Commerce's original analysis finding that the door thresholds were subassemblies based on the further assembly and incorporation of other components/parts to form downstream finished merchandise.[54]  The central question Commerce analyzed was not whether record evidence indicates the door thresholds themselves may undergo further cutting or fabrication, but whether they are intermediary products that require further incorporation of other components to form a downstream finished product.[55]

In addition, the Court also held that Commerce misinterpreted the scope language in concluding that, because Columbia's door thresholds were intermediate products, rather than final finished goods in and of themselves, the finished merchandise exclusion was inapplicable.[56] The Court stated that Columbia's door thresholds are similar to the exemplars provided in the finished merchandise exclusion – *e.g.*, doors with glass or vinyl – in that the exemplars are also incorporated into a larger downstream product such as a door unit or other structure.[57]  Thus, the Court disagreed with Commerce's finding that Columbia's door thresholds were subassemblies covered by the scope of the *Orders* and not excluded under the finished merchandise exclusion. However, Commerce's analysis identified the fact that door thresholds are specifically identified as an exemplar of in-scope subject merchandise in the scope language, while items such as doors

---

[53] *Id.* at 13-17.
[54] *See* Final Scope Ruling at 33, 37.
[55] *See* First Remand Redetermination at 25 ("{w}e find whether the door thresholds are inherently part of a larger whole is relevant in determining if the thresholds are either excluded finished goods or included subassemblies.")
[56] *See Columbia II* at 17-23.
[57] *Id.* at 17-22.

with glass or vinyl are specifically identified as an exemplar of excluded finished merchandise.[58] In addition, Commerce explained its finding that a door threshold "may be described as a part for a door, while the finished merchandise exclusion expressly covers finished 'doors with glass or vinyl.'"[59]  Therefore, Commerce distinguished the door thresholds from the listed exemplars in the finished merchandise exclusion by determining that the door thresholds are an intermediary product (part) to be later incorporated into a finished downstream product, here a door unit. Thus, Commerce has previously identified key distinctions between these products.

In any event, although Commerce respectfully disagrees with the Court's interpretation of the scope language, consistent with the Court's opinion and analysis, we continue to find in these Final Results of Redetermination that Columbia's door thresholds are finished merchandise excluded from the scope of the *Orders*, under protest.

---

[58] *See* Final Scope Ruling at 35-36 ("{F}inding door thresholds excluded under the finished merchandise exclusion would render the express inclusion of 'door thresholds' meaningless.")
[59] *Id.*

**VI.      Final Results of Redetermination**

As a result of this redetermination, we have determined, under protest, that Columbia's

door thresholds are outside the scope of the *Orders* pursuant to the finished merchandise

exclusion.  Should the Court sustain these Final Results of Redetermination, we will issue a

revised scope ruling accordingly.

12/13/2021

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations
  Performing the Non-Exclusive Functions and Duties
  of the Assistant Secretary for Enforcement and Compliance