UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS,<br><br>    Plaintiffs,<br><br> v.<br><br>UNITED STATES,<br><br>    Defendant.<br><br> and<br><br>ALUMINUM EXTRUSIONS FAIR TRADE<br>COMMITTEE AND ENDURA PRODUCTS, INC.,<br><br>    Defendant-Intervenor. | **Court No. 19-00013** |

**DEFENDANT'S RESPONSE TO COMMENTS
ON SECOND REMAND REDETERMINATION**

                       BRIAN M. BOYNTON
                       Acting Assistant Attorney General

                       PATRICIA M. McCARTHY
                       Director

                       TARA K. HOGAN
                       Assistant Director

OF COUNSEL:            AIMEE LEE

NIKKI KALBING          Assistant Director
Attorney              U.S. Dept. of Justice, Civil Division
Office of the Chief Counsel       Commercial Litigation Branch
 For Trade Enforcement & Compliance  26 Federal Plaza, Suite 346
Department of Commerce       New York, NY 10278
Washington, DC 20230        Tel: (212) 264-9253
                       Attorneys for the Defendant

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................2

I.  The Scope Of The Antidumping And Countervailing Duty Orders .................................2

II.  Administrative Determination Under Review ...................................................................3

III.  The Court's First Remand Order .......................................................................................4

IV.  Commerce's First Remand Redetermination .....................................................................5

V.  The Court's Second Remand Order ...................................................................................7

VI.  Commerce's Second Remand Redetermination ................................................................8

ARGUMENT .......................................................................................................................9

I.  Standard Of Review ...........................................................................................................9

II.  Commerce Complied With The Court's Second Remand Order In Finding That Columbia's Door Thresholds Are Outside The Scope Of The Orders ....................10

    A.  Interpretation of the Scope Language ......................................................................11

    B.  Columbia's Door Thresholds ....................................................................................13

CONCLUSION ..................................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*China Custom Mfg., Inc. v. United States,*
  No. 20-00121, Slip Op. 21-163 (Ct. Int'l Trade Dec. 6, 2021) .................................................. 11

*Columbia Aluminum Products LLC  v. United States,*
  Slip Op. 20-129 (Ct. Int'l Trade Aug. 27, 2020)
  470 F.Supp.3d 1353 (Ct Int'l Trade 2020) ........................................................................ passim

*Columbia Aluminum Products, LLC v. United States,*
  Slip Op. 21-116 (Ct. Int'l Trade Sept. 14, 2021)
  536 F.Supp.3d 1346 (Ct. Int'l Trade 2021) ........................................................................ passim

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966) ............................................................. 9

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ................................................................................................................... 9

*Global Commodity Grp. LLC v. United States,*
  709 F.3d 1134 (Fed. Cir. 2013) ................................................................................................. 9

*King Supply Co. v. United States,*
  674 F.3d 1343 (Fed. Cir. 2012) ................................................................................................. 9

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................................. 9

*Meridian Prods., LLC v. United States,*
  890 F.3d 1272 (Fed. Cir. 2018) ........................................................................................... 6, 12

*Meridian Products, LLC, v. United States,*
  No. 13-00246, 2020 WL 1672840 (CIT April 6, 2020) ........................................................... 11

*Mid Continent Nail Corp. v. United States,*
  725 F.3d 1295 (Fed. Cir. 2013) ................................................................................................. 9

*NSK Corp. v. United States,*
  637 F. Supp. 2d 1311 (Ct. Int'l Trade 2009) ........................................................................... 10

*Sandvik Steel Co. v. United States,*
  164 F.3d 596 (Fed. Cir. 1998) ................................................................................................... 9

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   776 F.3d 1351 (Fed. Cir. 2015) .................................................................... 5, 6, 11, 12

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   918 F.3d 1355 (Fed. Cir. 2019) .................................................................................. 11

*Viraj Group Ltd. v. United States,*
   343 F.3d 1371 (Fed. Cir. 2003) .................................................................................... 8

*Whirlpool Corp. v. United States,*
   890 F.3d 1302 (Fed. Cir. 2018) .............................................................................. 6, 12

**<u>Regulations</u>**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................ 9

19 C.F.R. § 351.225(k)(1) ................................................................................................. 3

**<u>Administrative Determinations</u>**

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,*
   76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ..................................... 2, 3, 4

*Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order,*
   76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) ............................................. 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Court No. 19-00013 <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ALUMINUM EXTRUSIONS FAIR TRADE ) <br> COMMITTEE and ENDURA PRODUCTS, INC., ) <br> ) <br> Defendant-Intervenors. ) <br> ) | |

**DEFENDANT'S RESPONSE TO COMMENTS
ON SECOND REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff Columbia Aluminum Products, LLC (Columbia) and defendant-intervenors Aluminum Extrusions Fair Trade Committee and Endura Products, Inc. (Defendant-Intervenors). *See* ECF No. 70 (Columbia Cmts.); ECF No. 72 (Def.-Intervenor Cmts.). The comments and our response concern the second results of redetermination issued by the Department of Commerce, *see Final Results of Redetermination Pursuant to Court Remand,* December 13, 2021, ECF No. 67 (Second Remand Results), issued pursuant to this Court's second opinion and remand order, *Columbia Aluminum Products, LLC v. United States*, Slip Op. 21-116 (Ct. Int'l Trade Sept. 14, 2021), 536 F.Supp.3d 1346 (Ct. Int'l Trade 2021) (Second Remand Order), concerning Commerce's final scope ruling on Columbia's door thresholds issued in December 2018. *See*

Memorandum, "Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group, Inc., and Columbia Aluminum Products Door Thresholds," dated Dec. 19, 2018 (Final Scope Ruling), P.R. 39.[1]

For the reasons explained below, the Court should sustain the Second Remand Results and enter final judgment for the United States because Commerce has complied with the Court's order and the Second Remand Results are supported by substantial evidence and are otherwise in accordance with law.

## BACKGROUND

### I. The Scope Of The Antidumping And Countervailing Duty Orders

The Orders on aluminum extrusions, in relevant part, cover:

> aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents).

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,* 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011).[2]  The Orders provide that aluminum extrusions may be "produced and imported with a variety of finishes" and "may also be fabricated, *i.e.*, prepared for assembly." *AD Order*, 76 Fed. Reg. at 30,650.  The general scope language also provides:

---

[1] "P.R." refers to public documents on the scope ruling record.  "P.R.R." refers to public documents on the first remand record.  P.R. and P.R.R. numbers in this response cite the antidumping duty record.

[2] Because the scope language in both orders is identical, for simplicity, we cite only to the AD Order unless otherwise noted.

2

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope.

*Id*. at 30,650-30,651.  Merchandise covered by the Orders include:

> aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

*Id*. at 30,651.  The Orders also provide:

> Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

*Id.*

The Orders contain several exclusions, including for "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels."  *Id.*

## II.     Administrative Determination Under Review

In the final scope ruling, Commerce determined that Columbia's door thresholds fall within the scope of the Orders, based on the scope language and 19 C.F.R. § 351.225(k)(1) sources.[3]  *See* Final Scope Ruling, P.R. 39.  Commerce determined that the extruded aluminum components in Columbia's door thresholds match the physical description of subject aluminum extrusions.  *Id*. at 33.  Commerce also found that the aluminum extruded components of the door thresholds are "parts for final finished products" (*i.e.*, parts for doors)

---

[3] The (k)(1) sources are the petition, the investigation, and the determinations of Commerce (including prior scope determinations) and the International Trade Commission (ITC).  19 C.F.R. § 351.225(k)(1).

3

that are assembled after importation (with additional components) to create the final finished product. *Id.* Commerce further determined that the door thresholds may be described as subassemblies, but that the non-aluminum extrusion components of Columbia's door thresholds are not subject to the Orders. *Id.* at 34.

Commerce also based its determination on the Orders' express reference to "door thresholds" as an identifying end-use of "subject extrusions." *Id.* Commerce further found the (k)(1) sources – specifically, prior scope rulings, the report of the International Trade Commission (ITC), and the petition and supplements thereto – supported its determination that Columbia's door thresholds fall within the scope of the Orders. *Id.* at 34-37. After finding that the door thresholds are covered by the scope language, Commerce determined that the finished merchandise exclusion did not apply. *Id.* at 35-36.

### III.     The Court's First Remand Order

Columbia challenged the final scope ruling. In this Court's first remand order, this Court held that Commerce misinterpreted the scope language. *Columbia Aluminum Products LLC v. United States*, Slip Op. 20-129 (Ct. Int'l Trade Aug. 27, 2020), 470 F.Supp.3d 1353 (Ct. Int'l Trade 2020) (First Remand Order) at 5-9. First, this Court found the Orders' provision covering "subject aluminum extrusions described at the time of importation as parts for final finished products" covers only aluminum extrusions that are assembled with other components after importation. *Id.* at 6-8. Because Columbia's door thresholds are assembled prior to importation, the Court held that they do not fall within that scope language. *Id.* at 7.

This Court also found that Commerce erroneously relied on the scope language identifying subject extrusions with reference to their end-use, with door thresholds listed as an example. *Id.* at 8-9. This Court determined that Columbia's door thresholds are not subject

4

extrusions but are assembled goods containing extruded aluminum and non-aluminum components.  *Id.* at 10.  Although this Court acknowledged that the scope of the Orders covers subassemblies composed of aluminum and non-aluminum components, the Court did not address Commerce's finding that Columbia's door thresholds are subassemblies.  *Id.* at 8, 16.

This Court also held that Commerce misinterpreted the 19 C.F.R. § 351.225(k)(1) factors.  *Id.* at 12-14.  According to this Court, references to door thresholds in the petition, supplements thereto, and the ITC report described thresholds that are stand-alone aluminum extrusions, not assembled goods such as Columbia's door thresholds.  *Id.*  This Court further held that Commerce erred by distinguishing Columbia's door thresholds from products addressed in other scope rulings on the basis that the product was not explicitly referenced in the scope language, because, as this Court found, Columbia's assembled door thresholds are also not specifically identified in the scope language.  *Id.* at 14.

After holding that Columbia's assembled door thresholds are not expressly covered by the general scope language, this Court concluded that Commerce erred by not considering whether the finished merchandise exclusion applies to Columbia's door thresholds.  *Id.* at 9-12.  Reasoning that the finished merchandise exclusion covers assembled goods containing extruded aluminum and non-aluminum components, this Court directed Commerce to consider, on remand, whether Columbia's door thresholds qualify for the exclusion.  *Id.* at 15-16.

### IV.     Commerce's First Remand Redetermination

On December 23, 2020, Commerce filed its first remand results.  *See Final Results of Redetermination Pursuant to Court Remand,* December 23, 2020, ECF No. 48 (First Remand Results).  Commerce issued its redetermination under respectful protest*,* in part, because it disagreed with this Court's opinion that the Federal Circuit's rulings in the *Shenyang Yuanda*

5

*2015* decision on the subassemblies provision are inapposite to this proceeding.  First Remand Results at 15 (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015) (*Shenyang Yuanda 2015*)).

Commerce also issued the first remand results under respectful protest because Commerce believed that its final scope ruling was consistent with *Whirlpool Corp. v. United States,* 890 F.3d 1302, 1308-09 (Fed. Cir. 2018) (*Whirlpool*) and *Meridian Prods., LLC v. United States,* 890 F.3d 1272, 1280-81 (Fed. Cir. 2018) (*Meridian*), decisions which this Court did not address in its first remand order.  First Remand Results at 10-11.  Although Commerce found these decisions instructive in guiding its analysis of whether Columbia's door thresholds are "parts for final finished products" and subject extrusions identified with reference to their end use, in compliance with the first remand order, Commerce did not consider those provisions in its first remand results*. Id.* at 14.

Commerce considered the physical description of Columbia's door thresholds with reference to the subassemblies provision in the general scope language.  Commerce also considered the finished merchandise exclusion in the context of the entire framework of the scope of the Orders, as well as the relevant (k)(1) sources: the petition, supplements to the petition, and Commerce's prior scope determinations.  *Id.* at 14-15. Commerce continued to find that Columbia's door thresholds are subassemblies and that only the extruded aluminum components of Columbia's door thresholds are included in the scope of the Orders.  *Id.* at 15.  Commerce concluded that, because Columbia's door thresholds are subassemblies under the general scope language, they do not meet the criteria for the "finished merchandise" exclusion. *Id.*

### V. The Court's Second Remand Order

In its second remand order, the Court held that Commerce impermissibly made findings in its first remand results which were based on an inference that was contradicted or unsupported by other record evidence. Second Remand Order at 2, 13-17. Specifically, in support of its conclusion that Columbia's door thresholds are not in and of themselves finished products, but intermediary products incorporated into larger finished merchandise, Commerce cited record evidence stating that door thresholds generally require cutting and fabrication prior to installation. First Remand Results at 43-45.

This Court concluded that these statements inferred, but did not clearly state, that Columbia's door thresholds were also customizable intermediate products, and that these statements contradicted Columbia's characterization of its door thresholds as assemblies that are ready for use without further processing and incapable of being cut to custom sizes without destroying the thresholds' functionality. Second Remand Order at 14-16. Because Commerce's determination cited this general characterization of door thresholds requiring further cutting or manufacturing, this Court remanded Commerce's decision to reconsider its factual findings regarding whether Columbia's door thresholds require further processing before incorporation with other products. *Id.* at 17, 18.

The Court also held that the language of the finished merchandise exclusion lists "doors with glass or vinyl" – but not door units – as exemplars of finished merchandise. *Id.* at 18-19. In its first remand results, Commerce concluded that the exemplars in the finished merchandise exclusion were not subassemblies because the scope specifically defined them as finished merchandise. *See* First Remand Results at 46. This Court also held that Commerce had not

sufficiently considered why "doors with glass or vinyl" – which, like door thresholds, were not part of a larger downstream product – could satisfy the finished merchandise exclusion, but Columbia's door thresholds could not. *Id.* at 26. This Court also held that Commerce improperly interpreted the exemplars as an exclusive list, rather than examples of finished merchandise. *Id.* at 46. Accordingly, this Court directed Commerce on remand to determine whether Columbia's door thresholds qualified for the finished merchandise exclusion. *Id.* at 2, 23.

### VI. Commerce's Second Remand Redetermination

On December 13, 2021, Commerce filed its Second Remand Results with this Court. Although Commerce disagreed with the Court's interpretation of the scope language, Commerce found, under respectful protest, that Columbia's door thresholds are not subassemblies covered by the general scope language, and that they satisfy the criteria for the finished merchandise exclusion. Second Remand Results at 11.[4] Specifically, this Court concluded that the record evidence did not support Commerce's finding that Columbia's door thresholds are subassemblies covered by the general scope language. Second Remand Order at 11-17. This Court also held that Columbia's door thresholds are similar to the exemplars provided in the finished merchandise exclusion – *e.g.*, doors with glass or vinyl – in that the exemplars are also not incorporated into a larger downstream product such as a door unit or other structure. *Id.* at 18-19. Accordingly, consistent with the Court's reasoning, Commerce found, under respectful protest, that Columbia's door thresholds are finished merchandise excluded from the Orders.

---

[4] Commerce may issue a remand redetermination "under protest" to preserve its right to appeal. *Viraj Group Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).

**ARGUMENT**

Commerce's Second Remand Results are supported by substantial record evidence, are in accordance with law, and comply fully with the Second Remand Order. Accordingly, the Court should sustain the Second Remand Results and enter final judgment for the United States.

I.     **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966) (citations omitted).

The Court grants "significant deference to Commerce's interpretation of a scope order." *Mid Continent Nail Corp. v. United States,* 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Grp. LLC v. United States,* 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because a scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. v. United States,* 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States,* 164 F.3d 596, 600 (Fed. Cir. 1998).

## II. Commerce Complied With The Court's Second Remand Order In Finding That Columbia's Door Thresholds Are Outside The Scope Of The Orders

Commerce issued the Second Remand Results under respectful protest because it disagrees with the Court's interpretation of the scope language. Second Remand Results at 11. Nonetheless, because Commerce complied with the remand order, its findings are supported by substantial evidence, and are otherwise in accordance with law, we respectfully request that this Court sustain Commerce's Second Remand Results. Columbia also urges that the Second Remand Results should be affirmed. Columbia Cmts. at 1.

Defendant-Intervenors, on the other hand, argue that Commerce correctly determined in the Final Scope Ruling and First Remand Results that Columbia's door thresholds are covered by the scope language – including the subassemblies provision – and thus are not excluded from the Orders as finished merchandise. Def.-Intervenor Cmts. at 2-3. While acknowledging that Commerce issued its Second Remand Results under protest, Defendant-Intervenors argue that Commerce's finding that Columbia's door thresholds meet the Orders' finished merchandise exclusion was not based on substantial evidence or is in accordance with law. *Id.* In its comments, Defendant-Intervenors contend that Commerce's earlier scope rulings were lawful and supported by substantial evidence. This Court, however, has already rejected that position in its earlier two opinions and orders. While this Court is always free to revisit its earlier interlocutory decisions, Commerce is not free to disregard the Court's remand order. *See NSK Corp. v. United States*, 637 F. Supp. 2d 1311, 1318 (Ct. Int'l Trade 2009) ("The failure of an agency to candidly comply with the instructions in a remand order not only shows a disregard for the issuing court's authority, but it is also an act that is contrary to law"). Commerce here has complied with the Court's remand order, under respectful protest.

### A. <u>Interpretation of the Scope Language</u>

Defendant-Intervenors contend that Commerce's earlier conclusion that a subassembly cannot qualify for the finished merchandise was consistent with both Federal Circuit precedent and the analytical framework laid out in the Meridian Door Handles Second Remand Redetermination.[5]  Def-Intervenor Cmts. at 3-6 (citing Meridian Door Handles Second Remand Redetermination at 31, P.R.R 6, and *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) (*Shenyang Yuanda 2019*)).

In the First Remand Results, Commerce explained that its interpretation of the subassemblies provision and finished merchandise exclusion had evolved during the course of extensive litigation – particularly the Meridian Door Handles Second Remand Redetermination and *Shenyang Yuanda 2015*.  First Remand Results at 25.  Accordingly, Commerce's analysis in the First Remand Results was consistent with both the Meridian Door Handles Second Remand Redetermination and the Federal Circuit's rulings on the subassemblies provision in *Shenyang Yuanda 2015*.  *Id.* at 24-25.  As Defendant-Intervenors also acknowledge, this Court's recent decision in *China Custom Mfg., Inc. v. United States*, No. 20-00121, Slip Op. 21-163 (Ct. Int'l Trade Dec. 6, 2021) cited the Meridian Door Handles Second Remand Redetermination, *Shenyang Yuanda 2015,* and *Shenyang Yuanda 2019* to affirm Commerce's determination that a subassembly covered by the scope of the Orders does not qualify for the finished merchandise exclusion.  Def.-Intervenor Cmts. at 15-16.

---

[5]  The Court did not reach the merits of Commerce's analysis in the Meridian Door Handles Second Remand Redetermination, but sustained the remand because neither the plaintiff nor plaintiff-intervenor filed comments with Commerce or the Court objecting to Commerce's remand redetermination.  *See* Meridian Door Handles Second Remand Redetermination; *Meridian Products, LLC, v. United States*, No. 13-00246, 2020 WL 1672840 (CIT April 6, 2020).

Nevertheless, this Court held that *Meridian* and *Whirlpool* "do not support the Department's position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a 'subassembly.'" Second Remand Order at 12, n. 5. Furthermore, in its First Remand Order, this Court concluded that *Shenyang Yuanda 2015* was not applicable to this proceeding. First Remand Order at 11, n. 4. Thus, although Defendant-Intervenors cite other authority to support Commerce's interpretation in the First Remand Results that a subassembly does not qualify for the finished merchandise exclusion, Commerce complied with this Court's Second Remand Order, which does not rely upon those authorities. Def.-Intervenor Cmts. at 3-4, 6, 15-16.

Defendant-Intervenors also argue that Commerce reasonably concluded in the First Remand Results that, because the product exemplars in the finished merchandise exclusion are defined as finished merchandise in and of themselves, they require no further analysis as to whether they are incorporated into a downstream product. *Id.* at 13-14. Commerce took this position in the First Remand Results, but this Court did not affirm Commerce's scope interpretation distinguishing Columbia's door thresholds from the products specifically listed in the finished merchandise exclusion. This Court held that Commerce had not sufficiently considered why "doors with glass or vinyl" – which, like door thresholds, were not part of a larger downstream product – could satisfy the finished merchandise exclusion, but Columbia's door thresholds could not. *Id.* at 20. This Court also held that Commerce improperly interpreted the exemplars as an exclusive list, rather than examples of finished merchandise. *Id.* at 21.

Thus, the Court disagreed with Commerce's finding that Columbia's door thresholds were subassemblies covered by the scope of the Orders and not excluded under the finished merchandise exclusion. Therefore, although Defendant-Intervenors argue, Def.-Intervenor Cmts.

at 13-14, as Commerce did in the First Remand Results, that the finished merchandise exclusion includes products that are defined as such and require no further analysis as to whether they are incorporated into a downstream product, this Court's Second Remand Order precludes such a finding.

### B. Columbia's Door Thresholds

Defendant-Intervenors argue that, in determining that Columbia's door thresholds are subassemblies in the First Remand Results, Commerce reasonably relied on Columbia's description of its door thresholds; general industry information indicating that door thresholds are not final finished products, but intermediate products that require additional cutting or fabrication before incorporation into a larger downstream product; and product descriptions of MJB Wood Group Inc. and Worldwide Door LLC, which imported door thresholds similar to Columbia, and for which Commerce issued a joint scope ruling with Columbia.  Def.-Intervenor Cmts. at 7-10.

However, this Court already held that the industry descriptions cited by Commerce do not indicate whether Columbia's door thresholds require cutting or machining prior to assembly in a door unit or other structure, and were contradicted by Columbia's statement that its door thresholds "*cannot* be cut to custom sizes because doing so destroys the assembled thresholds, rendering them unuseable [sic]."  *See* Second Remand Order at 14.  "Once cut, Columbia's finished threshold no longer seal against water or insulate air." *Id*. at 15.  Moreover, although Commerce cited Columbia's product description to conclude that Columbia's door thresholds "must work in tandem with other components to be functional" and is "a component of a larger downstream product," such as a completed door unit, this Court's Second Remand Order did not affirm Commerce's finding, based on this evidence, that Columbia's door thresholds are

13

subassemblies that do not qualify for the finished merchandise exclusion. Second Remand Order at 19 (citing First Remand Results at 23-24). Rather, the Court held that Commerce's First Remand Results finding that Columbia's door thresholds are subassemblies not excluded under the finished merchandise exclusion were not supported by substantial evidence. Thus, although Commerce disagreed with the Court's interpretation of the scope language, consistent with the Court's opinion and analysis, Commerce found that Columbia's door thresholds are finished merchandise excluded from the scope of the Orders.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Second Remand Results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:

NIKKI KALBING
Attorney
Office of the Chief Counsel
   For Trade Enforcement & Compliance
Department of Commerce
Washington, DC 20230

/s/ Aimee Lee
AIMEE LEE
Assistant Director
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, NY 10278
Tel: (212) 264-9253

February 11, 2022

Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 3,644 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

                                         /s/Aimee Lee