Slip Op. 22-92

UNITED STATES COURT OF INTERNATIONAL TRADE

COLUMBIA ALUMINUM PRODUCTS, LLC,

                     Plaintiff,

       v.

UNITED STATES,

                     Defendant,

     and

ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,

                     Defendant-Intervenors.

**Before:  Timothy C. Stanceu, Judge**

**Court No. 19-00013**

OPINION AND ORDER

[Ordering a remand to the issuing agency of a determination that is not in a form the court could sustain upon judicial review]

Dated: August 10, 2022

*Jeremy W. Dutra*, Squire Patton Boggs (US) LLP, of Washington, DC, for plaintiff. With him on the brief was *Peter Koenig*.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for defendant-intervenors.  With him on the brief were *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge:  Plaintiff Columbia Aluminum Products, LLC ("Columbia") brought this action to contest a determination (the "Scope Ruling") issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") on its imported "door thresholds," each of which is an assembly containing an aluminum extrusion among various other components.  In this litigation, Commerce previously took the position that an aluminum extrusion component within each door threshold is within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders").

Before the court is the Department's most recent decision ("Second Remand Redetermination"), *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 13, 2020), ECF No. 67-1 ("*Second Remand Redetermination*"), which Commerce submitted in response to the court's opinion and order in *Columbia Aluminum Products, LLC. v. United States*, 45 CIT __, 536 F. Supp. 3d 1346 (2021) ("*Columbia II*").  In an effort to respond to the court's order while changing its position only under protest, Commerce stated in the Second Remand Redetermination that the aluminum extrusion components within the imported door thresholds are not subject to the Orders.

Plaintiff has commented in favor of the Second Remand Redetermination.

Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura

Products, Inc., a U.S. producer of aluminum extrusions, have commented in opposition.

The court issues another remand order to Commerce.  The Department's latest

decision is not itself a new scope ruling in a form the court could sustain.  Instead,

Commerce informs the court that if the court were to sustain the Second Remand

Redetermination, Commerce would issue a new scope ruling accordingly.  Under this

proposal, Commerce would issue its final ruling outside of the court's direct review.  In

addition, the agency determination before the court misconstrues the court's opinion in

*Columbia II* in certain respects.  The court orders Commerce to submit for the court's

consideration, on an expedited basis, a new determination that would go into effect if

sustained upon judicial review.

## I. BACKGROUND

Background on this case is presented in the court's prior opinions and is

summarized and supplemented herein.  *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1348–49,

*Columbia Aluminum Products, LLC v. United States*, 44 CIT __, __, 470 F. Supp. 3d 1353,

1354–56 (2020) ("*Columbia I*").

Columbia brought this action to contest the Scope Ruling, which Commerce

issued as *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the*

*People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB*

*Wood Group Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 39 (Int'l

Trade Admin. Dec. 19, 2018).  The Scope Ruling construed the scope of *Aluminum*

*Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg.

30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"), and *Aluminum Extrusions From*

*the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade

Admin. May 26, 2011) ("*CVD Order*").

    The court remanded the Scope Ruling to Commerce in *Columbia I*, ruling that

Commerce had misinterpreted the scope language of the Orders in two respects and,

finding Commerce's response to the court's opinion and order in *Columbia I* (the "First

Remand Redetermination"), *Final Results of Redetermination Pursuant to Court Remand*

(Dec. 23, 2020), ECF No. 48-1 ("*First Remand Redetermination*"), flawed as well, issued a

second remand order in *Columbia II*.

    In response to the court's order in *Columbia II*, Commerce filed the Second

Remand Redetermination with the court on December 13, 2021.  *See Second Remand*

*Redetermination*.  Plaintiff submitted comments in support on January 12, 2022.

Pl. Columbia Aluminum Products, LLC's Comments on Commerce's Final Remand

Determination, ECF No. 70.  Defendant-intervenors filed their comments in opposition

on January 12, 2022.  Def.-Intervenors' Comments on Final Results of Second

Redetermination Pursuant to Ct. Remand, ECF Nos. 71 (conf.), 72 (public).  Defendant

replied to the comments on February 11, 2022.  Def.'s Resp. to Comments on Second

Remand Redetermination, ECF No. 77.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order."  *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing an agency determination, including one issued in

response to court order, the court must set aside any determination, finding, or

conclusion found "to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

_____

[1] Citations to the United States Code and to the Code of Federal Regulations are
to the 2018 editions.

### B.  The Court's Decisions in *Columbia I* and *Columbia II*

The Orders apply generally to "aluminum extrusions," which are defined in the Orders as "shapes and forms, produced by an extrusion process."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  As the court's previous decisions have recognized, the door thresholds at issue in this litigation are not themselves aluminum extrusions.  Nevertheless, the Orders contain a provision (the "subassemblies" provision) that enlarges the scope of the Orders to include aluminum extrusion components present in certain imported "partially assembled merchandise."  Another provision in the scope language of the Orders, the "finished merchandise exclusion," excludes from the scope of the Orders certain assembled and completed merchandise containing aluminum extrusions as parts.

At issue in this litigation are ten models of imported door thresholds, each of which is not itself an aluminum extrusion but is instead an assembly of various components.  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1355.  One of those components in each door threshold is fabricated from a single piece of extruded aluminum and, were it imported separately, would fall within the scope of the Orders.  Each of the ten models of door thresholds contains, in addition to the aluminum extrusion component, various other, non-aluminum components (made of various materials such as plastic or wood).  *Id*.

In *Columbia I*, the court held that the contested Scope Ruling misinterpreted the scope language of the Orders in three respects.  The Scope Ruling relied on a sentence in the scope language, "[s]ubject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture."  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.  From this sentence, the Scope Ruling concluded that ". . . the aluminum extruded components of . . . Columbia's door thresholds may be described as parts for final finished products, *i.e.*, parts for doors, which are assembled after importation (with additional components) to create the final finished product, and otherwise meet the definition of in-scope merchandise."  *Scope Ruling* at 33.  Rejecting this reasoning, *Columbia I* stated that "[t]he Scope Ruling erred in relying on that sentence from the scope language, which is inapplicable to the issues presented by Columbia's imported products."  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d. at 1357.  The court noted that Commerce failed to recognize that the subject of the quoted sentence was "[s]ubject *aluminum extrusions*," which Columbia's door thresholds, at the time of importation, were not.  *Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1357 (quoting *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added)).  "The sentence refers to the way that goods may be described 'at the time of importation,' but according to the

uncontested facts, Columbia's door thresholds are not 'aluminum extrusions' at the

time of importation; rather, they are door thresholds that contain an aluminum

extrusion as a component in an assembly." *Id*.  With respect to the scope language

sentence at issue, which contains the words "may be described at the time of

importation as parts for final finished products," *AD Order*, 76 Fed. Reg. at 30,650; *CVD*

*Order*, 76 Fed. Reg. at 30,654, the court reasoned that the aluminum extrusion

component in each door threshold is not itself the imported article and that it had

become part of the imported assembly prior to, and not after, importation.  *Columbia I*,

44 CIT at __, 470 F. Supp. 3d. at 1357 (quoting *AD Order*, 76 Fed. Reg. at 30,650; *CVD*

*Order*, 76 Fed. Reg. at 30,654 (emphasis added)).

    *Columbia I* ruled that Commerce also erred in misinterpreting the following

sentence from the scope language in the Orders: "'Subject extrusions may be identified

with reference to their end use, such as fence posts, electrical conduits, *door thresholds*

. . . .'" *Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1359 (quoting *AD Order*, 76 Fed. Reg. at

30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphases added)).  Mentioning that "the

plain language of the scope of the *Orders* specifies that 'door thresholds' are included

within the scope 'if they otherwise meet the scope definition . . .,'" the Scope Ruling

erroneously concluded that "[i]n light of the above, we find that . . . Columbia's door

thresholds are within the scope of the *Orders*."  *Scope Ruling* at 34.  As *Columbia I*

pointed out, Commerce overlooked that the subject of this sentence in the scope

language of the Orders also is "[s]ubject extrusions," which Columbia's door thresholds

are not.  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d. at 1358 (quoting *AD Order*, 76 Fed.

Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added)).  The court noted

that "the inclusion of 'door thresholds' in the scope language as an exemplar is confined

to door thresholds that *are* aluminum extrusions" and that "a good that *contains* an

extruded aluminum component as one of a number of components is not the same as a

good that *is* an extrusion."  *Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1359.

The court identified a third error in the interpretation Commerce applied to the

scope language, which was to refuse to consider whether Columbia's door thresholds

were excluded from the scope of the Orders under the "finished merchandise

exclusion."  *Id.*  This express exclusion from the scope applies to "finished merchandise

containing aluminum extrusions as parts that are fully and permanently assembled and

completed at the time of entry, such as finished windows with glass, doors with glass or

vinyl, picture frames with glass pane and backing material, and solar panels."

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Commerce concluded in the Scope Ruling that "the express inclusion of 'door

thresholds' within the scope of the *Orders* (regardless of whether the door thresholds

are ready for use at the time of importation) renders the reliance of . . . Columbia upon

the finished merchandise exclusion inapposite." *Scope Ruling* at 35–36. *Columbia I*

rejected the Department's reasoning because it misinterpreted the scope language of the

Orders. *Columbia I*, 44 CIT at __, 470 F. Supp. 3d. at 1359. "The scope language does not

expressly include all door thresholds in which there is an extruded aluminum

component. Instead, as the court has discussed, the inclusion of 'door thresholds' in the

scope language as an exemplar is confined to door thresholds that *are* aluminum

extrusions." *Id.* (citing *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at

30,654).

     *Columbia I* also concluded that Commerce "erred in reasoning that 'finding door

thresholds excluded under the finished merchandise exclusion would render the

express inclusion of "door thresholds" meaningless.'" *Id.*, 44 CIT at __, 470 F. Supp. 3d.

at 1359 (quoting *Scope Ruling* at 36). As the court recognized, "[d]oor thresholds that are

fabricated from aluminum extrusions are 'extrusions' for purposes of the scope

language and are expressly included in the scope by operation of the reference to 'door

thresholds'; other door thresholds, which are not themselves 'extrusions' for purposes

of the Orders, are not." *Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1359. *Columbia I* added that:

> Rather than rendering the express inclusion of door thresholds
> meaningless, excluding the assembled goods at issue from the Orders
> according to the finished merchandise exclusion would have no effect at
> all on the express inclusion of door thresholds, for a straightforward
> reason: a door threshold that is fabricated from an aluminum extrusion
> could never qualify under the finished merchandise exclusion in the first

place because the finished merchandise exclusion applies only to
assembled goods.

*Id*. (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

*Columbia I* also rejected the Department's conclusion that the Scope Ruling was

supported by sources described in its regulation, 19 C.F.R. § 351.225(k)(1) (providing

that the Secretary of Commerce may take into account "[t]he descriptions of the

merchandise contained in the petition . . . ; . . . the initial investigation . . . ;

[d]eterminations of the Secretary, including prior scope rulings . . . ; and

[d]eterminations of the [U.S. International Trade] Commission . . . ."). The court

explained that the Department's reliance on the petition, certain materials pertinent to

the investigation, and the injury determination of the U.S. International Trade

Commission was misplaced, Commerce again having mistaken references to door

thresholds that are aluminum extrusions for references to assemblies containing an

aluminum extrusion as a component. *Columbia I*, 44 CIT at __, 470 F. Supp. 3d. at 1360–

61.

In light of the multiple errors the court identified, *Columbia I* ordered Commerce

to reconsider the Scope Ruling and to give "full and fair" consideration to the issue of

whether the finished merchandise exclusion applies to Columbia's door thresholds,

"upon making findings that are supported by substantial record evidence." *Id*., 44 CIT

at __, 470 F. Supp. 3d. at 1362.

In response to the court's opinion and order in *Columbia I*, Commerce submitted

the First Remand Redetermination on December 23, 2020.  *See First Remand*

*Redetermination*.  In it, Commerce, relying solely on statements by defendant-intervenors

that did not pertain specifically to Columbia's door thresholds, and despite certain

record evidence that *did* pertain to Columbia's products, suggested, but did not

expressly find, "that the specific door thresholds at issue in this proceeding are so

designed and manufactured as to require cutting or machining prior to incorporation

into a door frame or other structure."  *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1353

(citing *First Remand Redetermination* at 44–45).  The court attached significance to

whether Columbia's imported door thresholds required cutting or machining prior to

use because that issue "bears on the language in the finished merchandise exclusion

referring to 'finished merchandise containing aluminum extrusions as parts that are

fully and permanently assembled *and completed* at the time of entry.'"  *Id.*, 45 CIT at __,

536 F. Supp. 3d at 1354 (quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed.

Reg. at 30,654 (emphasis added)).  Recognizing the importance of this factual question,

the court ordered Commerce to "make a factual determination to resolve this issue

based on a consideration of the record evidence, viewed in the entirety."  *Id.*, 45 CIT at

__, 536 F. Supp. 3d at 1354.

*Columbia II* also found fault with certain reasoning in the First Remand

Redetermination pertaining to the finished merchandise exclusion.  Commerce

determined that Columbia's door thresholds were described by the "subassemblies"

provision in the scope language, under which "[t]he scope includes the aluminum

extrusion components that are attached (*e.g.,* by welding or fasteners) to form

subassemblies, *i.e.,* partially assembled merchandise unless imported as part of the

finished goods 'kit' defined further below."[2]  *AD Order*, 76 Fed. Reg. at 30,651; *CVD*

*Order*, 76 Fed. Reg. at 30,654.  Under the subassemblies provision, only the aluminum

extrusion component (or components) of such "partially assembled merchandise" is

within the scope of the Orders, not the entire good as imported.  *AD Order*, 76 Fed. Reg.

at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  According to the First Remand

Redetermination, "[a] subassembly is merchandise which is designed for the sole

purpose of becoming part of a larger whole"; Commerce concluded that each of

Columbia's door thresholds, which "must work in tandem with other components to be

---

[2] The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an unassembled package of all the necessary parts to assemble a final finished good.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  Because the door thresholds at issue are imported in fully assembled, not disassembled form, this exclusion does not apply.

functional" and is "a component of a larger downstream product," cannot, for those

reasons, qualify for the finished merchandise exclusion.  *First Remand Redetermination* at

23–24 (citation omitted).

The court noted that Commerce, in the First Remand Redetermination,

"reasoned that goods falling within the subassemblies provision of the Orders cannot

also be considered goods qualifying for the finished merchandise exclusion, i.e.,

Commerce considers these two categories to be mutually exclusive."  *Columbia II*, 45 CIT

at __, 536 F. Supp. 3d at 1352 (citing *First Remand Redetermination* at 17–22).  "Thus,

Commerce employed an analysis under which any goods it deems to be described by

the subassemblies provision are, *per se*, ineligible for the finished merchandise

exclusion."  *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1352.  The court did not sustain this

reasoning, nor did the court reject it.  Instead, the court stated that "[t]he court need not

decide whether this analysis is a correct interpretation of the scope language, for even if

it is, the Department's decision still must be remanded to Commerce because it relies

upon an impermissible finding or inference."  *Id.*  Thus, *Columbia II* did not decide the

question of whether or not Columbia's imported door thresholds were described by the

subassemblies provision in the scope of the Orders.  The court proceeded in *Columbia II*

to discuss the reasons why Commerce must decide the issue of whether Columbia's

door thresholds "are so designed and manufactured as to require cutting or machining

prior to incorporation into a door frame or other structure," *id.*, 45 CIT at __, 536 F.

Supp. 3d at 1353, and then decide whether or not the finished merchandise exclusion

applied to the Columbia's imported door thresholds.

  With regard to the finished merchandise exclusion, Commerce reasoned in the

First Remand Redetermination that the exemplars mentioned in the scope language on

the finished merchandise exclusion are defined by the scope language as finished

merchandise and therefore, unlike Columbia's door thresholds, are not "intermediate

product[s]" described by the subassemblies provision.  *Id.*, 45 CIT at __, 536 F. Supp. 3d

at 1355–56 (quoting *First Remand Redetermination* at 44).  The court identified flaws in the

Department's reasoning, which failed to recognize that two exemplars, finished

windows with glass and doors with glass or vinyl, also describe products designed to

become part of a larger whole; for example, an assembled door is designed to become

part of a larger structure, such as a door frame assembly, and a finished window part of

a dormer or wall, with both ultimately destined to become part of a building.

Commerce nevertheless insisted in the First Remand Redetermination that because of

the specific mention of the door and the window in the language of the finished

merchandise exclusion, "'[t]here is no need to further analyze whether the enumerated

products in the finished merchandise exclusion work in conjunction with other

products, and no requirement that, for example, a window with glass or a door with

glass or vinyl be assembled into a house to satisfy the finished merchandise exclusion.'"

*Id.*, 45 CIT at __, 536 F. Supp. 3d at 1356 (quoting *First Remand Redetermination* at 46).

The court opined in *Columbia II* that "[t]his reasoning is based on a serious

misinterpretation of the scope language setting forth the finished merchandise

exclusion." *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1356. "Contrary to the express terms of

that exclusion, Commerce interprets the exemplars therein as separate, individual

exclusions" rather than as what they are, i.e., exemplars. *Id*.

At its conclusion, *Columbia II* directed Commerce to "reconsider in the entirety

the decision reached in the [First] Remand Redetermination as to the finished

merchandise exclusion and reach a new determination that complies with the

instructions in this Opinion and Order." *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1357.

## C. The Second Remand Redetermination

The Second Remand Redetermination is not a decision in a form the court could

sustain. The concluding paragraph of the Second Remand Redetermination states as

follows:

> As a result of this redetermination, we have determined, under
> protest, that Columbia's door thresholds are outside the scope of the
> *Orders* pursuant to the finished merchandise exclusion. Should the court
> sustain these Final Results of Redetermination, we will issue a revised
> scope ruling accordingly.

*Second Remand Redetermination* at 17.  The Department's proposed resolution seeks court

approval for a decision that, unlike the agency determination contested in this litigation,

is not a scope ruling or determination but is merely preliminary to such a decision.

Because it is not the actual scope ruling or determination Commerce plans to issue, it

would not be self-effectuating should the court sustain it, and the agency decision that

would follow if it were sustained would escape direct judicial review.  In this

circumstance, the court finds the Department's proposed resolution of this litigation

unsatisfactory.  Not only would it deny the court the opportunity to review the agency's

actual decision on remand, it also would not allow the parties to comment on that

decision before the court reviews it.  Moreover, the court must rule on an agency

decision, including one submitted in response to court order, by considering the

decision according to the reasoning the agency puts forth.  *See Michigan v. EPA*, 576 U.S.

743, 758 (2015) (It is a "foundational principle of administrative law" that judicial

review of agency action is limited to "the grounds that the agency invoked when it took

the action." (citing  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))).  The proposed

resolution Commerce has offered does not allow the court to perform its essential

judicial review function, and the court, therefore, rejects it.  The court directs Commerce

to issue a third remand redetermination that, like the agency determination contested in

this litigation, is a scope ruling or determination for the court's review, and it must be in

a form that would go into effect if sustained upon judicial review.

The Second Remand Redetermination is flawed in presenting no reasoning for

ruling that the door thresholds are outside the scope of the Orders other than its

incorrect conclusion that the court ordered Commerce to do so.  The Second Remand

Redetermination misinterprets *Columbia II* in this respect as well as others.  Commerce

devoted most of the substantive discussion in the Second Remand Redetermination to

its disagreements with certain of the issues the court decided previously.  Then, in the

concluding paragraph, Commerce stated that:

> In any event, although Commerce respectfully disagrees with the
> Court's interpretation of the scope language, consistent with the court's
> opinion and analysis, we continue to find [as Commerce did in draft
> results it issued to the parties] in these Final Results of Redetermination
> that Columbia's door thresholds are finished merchandise excluded from
> the scope of the *Orders*, under protest.

*Second Remand Redetermination* at 16.

In expressing its disagreements with the court, Commerce stated, erroneously,

that "in *Columbia II*, the Court found unpersuasive Commerce's determination that

Columbia's door thresholds were subassemblies which must be further incorporated

into a larger downstream product."  *Id.* at 10–11.  The Second Remand Redetermination

concluded, further, that "the court disagreed with Commerce's finding that Columbia's

door thresholds were subassemblies covered by the scope of the *Orders* and not

excluded under the finished merchandise exclusion." *Id*. at 11.  The Department's

interpretation of *Columbia II* errs in three respects.

First, the court did not decide in *Columbia II* whether Columbia's door thresholds

are "subassemblies" within the meaning of the subassemblies provision in the scope

language of the Orders.  Instead, the court reasoned that Commerce, not the court, must

decide this question.  *See Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1355–56.

Moreover, it was illogical for Commerce to presume that the court had ruled that the

door thresholds were not "subassemblies."  Had the court actually decided—as

Commerce apparently believed the court had—that the subassemblies provision in the

scope language did *not* describe Columbia's imported door thresholds, the court would

not have proceeded to address the issue of whether the finished merchandise exclusion

applied to those goods.  For if Columbia's door thresholds are *not* described by the

subassemblies provision, there can be no reason to decide whether the finished

merchandise exclusion applies.  If the scope language had not contained the

subassemblies provision, the only imported products that could have been held to fall

within the scope of the Orders are those that may be described at the time of

importation as "aluminum extrusions" within the definition of that term as set forth in

the scope language of the Orders, which expressly defines aluminum extrusions as

"shapes or forms, produced by an extrusion process."  *AD Order*, 76 Fed. Reg. at 30,650;

*CVD Order*, 76 Fed. Reg. at 30,653.  It is uncontested that Columbia's door thresholds are

imported in assembled form with non-aluminum components.  Thus, in the form in

which they are imported, Columbia's door thresholds—as opposed to a single

component within each—cannot conform to the scope definition of "extrusions," and

Commerce has offered no plausible reasoning under which they could be held to do so.

Second, the court did not rule that Commerce incorrectly found that the door

thresholds are designed to be incorporated into a larger downstream product, which

they plainly are.  Instead, as the court discussed previously, the *Columbia II* opinion took

issue with the Department's failing to recognize that two of the exemplars in the

finished merchandise exclusion also are goods designed for incorporation into a

downstream product or structure and the Department's misinterpreting the exemplars

as specific, limited exclusions.  *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1356.

Third, the court did not decide whether the finished merchandise exclusion

applied to Columbia's door thresholds.  To the contrary, the court remanded the First

Remand Redetermination so that Commerce could reach its own decision on that issue,

after making an actual finding on the issue of whether these products are so designed

and manufactured as to require cutting and machining prior to incorporation into

another structure.

On the latter issue, Commerce stated, first, that it considered this issue irrelevant when it issued the Scope Ruling, informing the court that ". . . the fact that the door thresholds themselves may not have undergone further cutting or fabrication was not central to Commerce's original analysis finding that the door thresholds were subassemblies based on the further assembly and incorporation of other components/parts to form downstream finished merchandise." *Id.* (citing *Scope Ruling* at 33, 37). Then, alluding to the reasoning underlying the Department's decision in the First Remand Redetermination, the Second Remand Redetermination states that "[t]he central question Commerce analyzed was not whether record evidence indicates the door thresholds themselves may undergo further cutting or fabrication, but whether they are intermediary products that require further incorporation of other components to form a downstream finished product." *Id.* (citing *First Remand Redetermination* at 25). The Second Remand Redetermination did not return to the factual issue the court identified. It is reasonable to presume that had Commerce believed that substantial evidence supported a finding that Columbia's door thresholds required cutting or

fabrication prior to use, it would have so stated in the Second Remand

Redetermination.[3]

### III. CONCLUSION AND ORDER

The Second Remand Redetermination is unsatisfactory because it is not in a form

in which the court could sustain it.  Commerce must issue a new determination that

decides the issue of whether or not the aluminum extrusion components in Columbia's

door thresholds are within the scope of the Orders.  It must be consistent with this

---

[3] Commerce did not actually state a finding of fact that Columbia's door thresholds required such modification, and, given the vagueness with which Commerce discussed the issue in the First Remand Redetermination, the court was not in a position to conclude that Commerce had done so.  The court considered it appropriate, therefore, to direct Commerce to resolve the factual dispute.

In comments on the Second Remand Redetermination, defendant-intervenors argue that Commerce again should have concluded that the finished merchandise exclusion does not apply and that the aluminum extrusion components in each of Columbia's door thresholds are subject to the Orders.  Among their arguments is that they "submitted information demonstrating that door thresholds are highly customizable and generally require further finishing and fabrication before assembly into a finished door unit."  Def.-Intervenors' Comments on Final Results of Second Redetermination Pursuant to Ct. Remand 8 (Jan. 12, 2022), ECF Nos. 71 (conf.), 72 (public).  Arguing that Commerce reached the correct result in the First Remand Redetermination, defendant-intervenors assert that "[t]he information provided by Defendant-Intervenors *describing the exact type of product at issue* is relevant evidence that Commerce, as the fact-finder, properly considered in weighing the entire record evidence and finding that Columbia's products do not meet the 'finished merchandise' exclusion requirements."  *Id*. at 11 (emphasis added).  Commerce did not indicate agreement with this argument.

Opinion and Order and, in particular, must be in a form that would go into effect if

sustained upon judicial review.

Upon consideration of the Second Remand Redetermination and all papers and

proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Second Remand Redetermination is remanded to
Commerce; it is further

**ORDERED** that Commerce, within 30 days from the date of issuance of this
Opinion and Order, shall submit a third redetermination upon remand ("Third Remand
Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenors shall have 15 days from the
filing of the Third Remand Redetermination in which to submit comments to the court;
and it is further

**ORDERED** that should plaintiff or defendant-intervenors submit comments,
defendant shall have 10 days from the date of filing of the last comment to submit a
response.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: August 10, 2022
        New York, New York