Slip Op. 22-144

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before:  Timothy C. Stanceu, Judge |
| Defendant, | Court No. 19-00013 |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC., | |
| Defendant-Intervenors. | |

OPINION

[Sustaining an agency decision submitted in response to court order.]

Dated: December 16, 2022

*Jeremy W. Dutra* and *Peter Koenig*, Squire Patton Boggs (US), LLP, of Washington, D.C., for plaintiff.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, New York, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Robert E. DeFrancesco, III*, *Alan H. Price* and *Elizabeth S. Lee*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.

Stanceu, Judge: Plaintiff Columbia Aluminum Products, LLC ("Columbia") brought this action to contest a determination (the "Scope Ruling") issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") on its imported "door thresholds," each of which is an assembly containing an aluminum extrusion among various other components.  In this litigation, Commerce previously took the position that an aluminum extrusion component within each door threshold is within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders").

Before the court is the Department's most recent decision ("Third Remand Redetermination"), which Commerce submitted in response to the court's opinion and order in *Columbia Aluminum Products, LLC. v. United States*, 46 CIT __, 587 F. Supp. 3d 1375 (2022) ("*Columbia III*").  Responding to the court's order, Commerce decided in the Third Remand Redetermination, under protest, that the imported door thresholds, in the entirety, are excluded from the scope of the Orders.

Plaintiff has commented in favor of the Third Remand Redetermination. Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura Products, Inc. ("Endura"), a U.S. producer of aluminum extrusions, have commented in opposition.

The court sustains the decision in the Third Remand Redetermination that the door thresholds are excluded from the scope of the Orders.

## I. BACKGROUND

Background on this case is presented in the court's prior opinions and is briefly summarized and supplemented herein. *Id.*, 46 CIT at __, 587 F. Supp. 3d at 1377–82; *Columbia Aluminum Products, LLC. v. United States*, 45 CIT __, __, 536 F. Supp. 3d 1346, 1348–52 (2021) ("*Columbia II*"); *Columbia Aluminum Products, LLC v. United States*, 44 CIT __, __, 470 F. Supp. 3d 1353, 1354–56 (2020) ("*Columbia I*").

Columbia brought this action to contest the Scope Ruling, which Commerce issued as *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components, Inc., MJB Wood Group, Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 39 (Int'l Trade Admin. Dec. 19, 2018) ("*Scope Ruling*").  The court remanded the Scope Ruling to Commerce in *Columbia I*, ruling that Commerce had misinterpreted the scope language of the Orders in two respects and remanded it again in *Columbia II*, ruling that Commerce had relied upon a finding or inference that was not supported by substantial evidence on the record.  The court issued a remand to Commerce once more in *Columbia III*.

Commerce filed the Third Remand Redetermination with the court on

September 9, 2022.  Final Results of Redetermination Pursuant to Ct. Remand, ECF

No. 85-1 ("*Third Remand Redetermination*").  Plaintiff submitted comments in support on

September 23, 2022.  Pl. Columbia Aluminum Products, LLC's Comments on

Commerce's Final Remand Determination, ECF No. 87.  Defendant-intervenors filed

their comments in opposition on September 26, 2022.  Def.-Intervenors' Comments on

Final Results of Third Redetermination Pursuant to Ct. Remand, ECF No. 88.

Defendant replied to the comments on October 6, 2022.  Def.'s Resp. to Comments on

Third Remand Redetermination, ECF No. 90.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to Section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order."  *Id.*

---

[1] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

§ 1516a(a)(2)(B)(vi).  In reviewing an agency determination, including one issued in response to court remand, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

   **B.  The Court's Decisions in *Columbia I*, *Columbia II*, and *Columbia III***

   The Orders apply generally to "aluminum extrusions," which are defined in the Orders as "shapes and forms, produced by an extrusion process."  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,653 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  As the court's previous decisions have recognized, the door thresholds at issue in this litigation are not themselves aluminum extrusions.  Nevertheless, the Orders contain a provision (the "subassemblies" provision) that enlarges the scope of the Orders to include certain "partially assembled" products that do not fall within the scope of the term "aluminum extrusions" but contain an aluminum extrusion as a component.  Another provision in the scope language of the Orders, the "finished merchandise exclusion," excludes from the scope of the Orders certain assembled and completed merchandise containing aluminum extrusions as parts.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

At issue in this litigation are ten models of imported door thresholds, each of which is not itself an aluminum extrusion but is instead an assembly of various components. One of those components in each door threshold is fabricated from a single piece of extruded aluminum. Were that component imported separately, it would fall within the scope language of the Orders. Each of the ten models of door thresholds contains, in addition to the aluminum extrusion component, various other, non-aluminum components (made of various materials such as plastic or wood).

In *Columbia I*, the court held that the contested Scope Ruling, in determining that the aluminum extrusion component in each door threshold is subject to the Orders, misinterpreted the scope language of the Orders in three respects and discussed these errors in detail. 44 CIT at __, 470 F. Supp. 3d at 1356–62. Among these errors was the Department's refusal to consider whether Columbia's door thresholds were excluded from the scope of the Orders under the "finished merchandise exclusion." *Id.*, 44 CIT at __, 470 F. Supp. 3d at 1358–60. This express exclusion from the scope applies to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Commerce concluded in the Scope Ruling that "the express inclusion of 'door thresholds' within the scope of the *Orders* (regardless of whether the door thresholds are ready for use at the time of importation) renders the reliance of . . . Columbia upon the finished merchandise exclusion inapposite."  *Scope Ruling* at 35–36; *see also AD Order*, 76 Fed. Reg. at 30,651 & *CVD Order*, 76 Fed. Reg. at 30,654 ("Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks . . . .").  The court in *Columbia I* rejected the Department's reasoning because it misinterpreted the "door thresholds" exemplar in the scope language of the Orders.  44 CIT at __, 470 F. Supp. 3d at 1359 ("The scope language does not expressly include all door thresholds in which there is an extruded aluminum component.  Instead, as the court has discussed, the inclusion of 'door thresholds' in the scope language as an exemplar is confined to door thresholds that *are* aluminum extrusions." (citing *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654)).

The court in *Columbia I* concluded, further, that "Commerce also erred in reasoning that 'finding door thresholds excluded under the finished merchandise exclusion would render the express inclusion of "door thresholds" meaningless.'"  44 CIT at __, 470 F. Supp. 3d at 1359 (quoting *Scope Ruling* at 36).  As the court recognized, "[d]oor thresholds that are fabricated from aluminum extrusions are

'extrusions' for purposes of the scope language and are expressly included in the scope

language by operation of the reference to 'door thresholds'; other door thresholds,

which are not themselves 'extrusions' for purposes of the Orders, are not." *Id.*

*Columbia I* added that:

> Rather than rendering the express inclusion of door thresholds
> meaningless, excluding the assembled goods at issue from the Orders
> according to the finished merchandise exclusion would have no effect at
> all on the express inclusion of door thresholds, for a straightforward
> reason: a door threshold that is fabricated from an aluminum extrusion
> could never qualify under the finished merchandise exclusion in the first
> place because the finished merchandise exclusion applies only to
> assembled goods.

*Id.* (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

In light of the errors the court identified, the court in *Columbia I* ordered

Commerce to reconsider the Scope Ruling and to give "full and fair" consideration to

the issue of whether the finished merchandise exclusion applies to Columbia's door

thresholds, "upon making findings that are supported by substantial record evidence."

*Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1362.

In response to the court's opinion and order in *Columbia I*, Commerce filed a new

decision (the "First Remand Redetermination") on December 23, 2020, Final Results of

Redetermination Pursuant to Ct. Remand, ECF No. 48-1 ("*First Remand

Redetermination*"), which was reviewed by the court in *Columbia II*. In the First Remand

Redetermination, Commerce, relying solely on statements by defendant-intervenors

that did not pertain specifically to Columbia's door thresholds, and despite certain

record evidence that *did* pertain to Columbia's products, implied, but did not expressly

find, "that the specific door thresholds at issue in this proceeding are so designed and

manufactured as to require cutting or machining prior to incorporation into a door

frame or other structure." *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1353; *see also First

Remand Redetermination* at 44–45. The court attached significance to whether Columbia's

imported door thresholds required cutting or machining prior to use because that issue

"bears on the language in the finished merchandise exclusion referring to 'finished

merchandise containing aluminum extrusions as parts that are fully and permanently

assembled *and completed* at the time of entry.'" *Id*., 45 CIT at __, 536 F. Supp. 3d at 1354

(quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

Recognizing the importance of this factual question, the court ordered Commerce in

*Columbia II* to "make a factual determination to resolve this issue based on a

consideration of the record evidence, viewed in the entirety." *Id*.

      The court in *Columbia II* also found fault with certain reasoning in the First

Remand Redetermination pertaining to the scope of the finished merchandise exclusion.

Commerce determined that Columbia's door thresholds were described by the

"subassemblies" provision in the scope language, *First Remand Redetermination* at 2,

under which "[t]he scope includes the aluminum extrusion components that are

attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled

merchandise unless imported as part of the finished goods 'kit' defined further below,"[2]

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  According to the

First Remand Redetermination, "a subassembly is merchandise which is designed for

the sole purpose of becoming part of a larger whole"; Commerce concluded that each of

Columbia's door thresholds, which "must work in tandem with other components to be

functional" and is "a component of a larger downstream product," cannot, for those

reasons, qualify for the finished merchandise exclusion.  *First Remand Redetermination* at

23–24 (citation omitted).

      The court noted that Commerce, in the First Remand Redetermination,

"reasoned that goods falling within the subassemblies provision of the Orders cannot

also be considered goods qualifying for the finished merchandise exclusion, i.e.,

Commerce considers these two categories to be mutually exclusive."  *Columbia II*, 45 CIT

at __, 536 F. Supp. 3d at 1352 (citing *First Remand Redetermination* at 17–22).  "Thus,

---

[2] The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an unassembled package of all the necessary parts to assemble a final finished good.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  Because the door thresholds at issue are imported in fully assembled, not disassembled form, this exclusion does not apply.

Commerce employed an analysis under which any goods it deems to be described by

the subassemblies provision are, *per se*, ineligible for the finished merchandise

exclusion." *Id*. The court did not sustain this reasoning, nor did the court reject it.

Instead, the court stated that "[t]he court need not decide whether this analysis is a

correct interpretation of the scope language, for even if it is, the Department's decision

still must be remanded to Commerce because it relies upon an impermissible finding or

inference." *Id*. Thus, the court in *Columbia II* did not decide the question of whether or

not Columbia's imported door thresholds were described by the subassemblies

provision in the scope of the Orders.

      The court proceeded in *Columbia II* to discuss the reasons why Commerce must

decide the issue of whether Columbia's door thresholds "are so designed and

manufactured as to require cutting and machining prior to incorporation into a door

frame or other structure," 45 CIT at __, 536 F. Supp. 3d at 1353, and then decide whether

or not the finished merchandise exclusion applied to Columbia's imported door

thresholds.

      With regard to the finished merchandise exclusion, Commerce reasoned in the

First Remand Redetermination that the exemplars mentioned in the scope language on

the finished merchandise exclusion are defined by the scope language as finished

merchandise and therefore, unlike Columbia's door thresholds, are not "intermediate

products" described by the subassemblies provision. *Columbia II*, 45 CIT at __,

536 F. Supp. 3d at 1355–56 (quoting *First Remand Redetermination* at 46).  The court

identified flaws in the Department's reasoning, which failed to recognize that two

exemplars of products the scope language described as satisfying the finished

merchandise exclusion, finished windows with glass and doors with glass or vinyl, also

describe products designed to become part of a larger whole.  *Id.*, 45 CIT at __, 536

F. Supp. 3d at 1355.  The court noted, for example, that an assembled door is designed

to become part of a larger structure, such as a door frame assembly, and a finished

window part of a dormer or wall, with both ultimately destined to become part of a

building.  *Id*.  Commerce nevertheless insisted in the First Remand Redetermination

that because of the specific mention of the assembled door and the assembled window

in the language of the finished merchandise exclusion, "[t]here is no need to further

analyze whether the enumerated products in the finished merchandise exclusion work

in conjunction with other products, and no requirement that, for example, a window

with glass or a door with glass or vinyl be assembled into a house to satisfy the finished

merchandise exclusion."  *Id*., 45 CIT at __, 536 F. Supp. 3d at 1356 (quoting *First Remand*

*Redetermination* at 46).  The court opined in *Columbia II* that "[t]his reasoning is based on

a serious misinterpretation of the scope language setting forth the finished merchandise

exclusion."  *Id.*  "Contrary to the express terms of that exclusion, Commerce interprets

the exemplars therein as separate, individual exclusions rather than as what they

plainly are.  They are exemplars, as shown by the use of the words 'such as.'"  *Id*.

(quoting *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

At its conclusion, *Columbia II* directed Commerce to "reconsider in the entirety

the decision reached in the [First] Remand Redetermination as to the finished

merchandise exclusion and reach a new determination that complies with the

instructions in this Opinion and Order."  45 CIT at __, 536 F. Supp. 3d at 1357.

In response to the court's opinion and order in *Columbia II*, Commerce issued the

Second Remand Redetermination.  Final Results of Redetermination Pursuant to Ct.

Remand (Dec. 13, 2021), ECF No. 67-1 (*"Second Remand Redetermination"*).  In the Second

Remand Redetermination, Commerce determined, under protest, that the door

thresholds were outside the scope of the Orders.  *Id*. at 17.

The court in *Columbia III* explained that the Second Remand Redetermination

was not a decision in a form the court could sustain because it "is not the actual scope

ruling or determination Commerce plans to issue," so "it would not be self-effectuating

should the court sustain it, and the agency decision that would follow if it were

sustained would escape direct judicial review."  46 CIT at __, 587 F. Supp. 3d at 1382.

Instead of providing the scope ruling intended to be issued, Commerce in the Second

Remand Redetermination stated that "[s]hould the court sustain these Final Results of

Redetermination, we will issue a revised scope ruling accordingly." *Second Remand*

*Redetermination* at 17.  The court held "the Department's proposed resolution of this

litigation unsatisfactory" because "[n]ot only would it deny the court the opportunity to

review the agency's actual decision on remand, it also would not allow the parties to

comment on that decision before the court reviews it." *Columbia III*, 46 CIT at __, 587 F.

Supp. 3d at 1382.  The court directed "Commerce to issue a third remand

redetermination that, like the agency determination contested in this litigation, is a

scope ruling or determination for the court's review, and it must be in a form that

would go into effect if sustained upon judicial review." *Id.*, 46 CIT at __, 587 F. Supp. 3d

at 1383.

The court in *Columbia III* also took issue with the Second Remand

Redetermination "in presenting no reasoning for ruling that the door thresholds are

outside the scope of the Orders other than its incorrect conclusion that the court ordered

Commerce to do so." *Id.*  The court observed that "Commerce devoted most of the

substantive discussion in the Second Remand Redetermination to its disagreements

with certain of the issues the court decided previously" and explained how the

Department's interpretation of *Columbia II* erred in three respects.  *Id.*, 46 CIT at __,

587 F. Supp. 3d at 1383–84.  The court ordered Commerce to submit a third

redetermination upon remand that complies with *Columbia III*.  *Id.*, 46 CIT at __, 587

F. Supp. 3d at 1385.

### C.  The Third Remand Redetermination

In the Third Remand Redetermination, Commerce decided once again, and again

under protest, that Columbia's door thresholds, in the entirety, fall outside the scope of

the Orders.  *Third Remand Redetermination* at 3.  Commerce stated in the Third Remand

Redetermination that it "do[es] not intend to issue a scope ruling or other agency

determination subsequent to this Court's review of this remand redetermination" and

that "if the CIT [Court of International Trade] affirms this redetermination, a *Federal*

*Register* notice will be published stating that, consistent with the Court's holdings,

Columbia's door thresholds are excluded from the scope of the *Orders*."  *Id.*  "Relevant

instructions to U.S. Customs and Border Protection (CPB) giving effect to that

determination, as appropriate, will also be issued at that time."  *Id*.

As the court explained in *Columbia III*, Commerce was required to make a

decision on whether the goods are within the scope of the Orders based on the record as

a whole.  Commerce has now done so in its decision in the Third Remand

Redetermination in a form the court is able to sustain.  The essential agency findings

supporting the decision that the door thresholds, in the entirety, are outside the scope of

the Orders are supported by substantial evidence on the record of this case.  *See id.* at 8–

16.

Defendant-intervenors' comments in opposition to the Third Remand

Redetermination are unconvincing and merely reiterate arguments the court has

rejected in its previous opinions and orders.  Def.-Intervenors' Comments on Final

Results of Third Redetermination Pursuant to Court Ct. Remand 1–3 (Sept. 26, 2022),

ECF No. 88.

Defendant-intervenors argue, first, that the contested Scope Ruling was correct in

"finding Columbia's door thresholds to be expressly included within the scope of these

orders" and in ruling that the finished merchandise exclusion is "inapplicable."  *Id*. at 1.

As the court concluded in *Columbia I*, and as the scope language of the Orders makes

clear, the express reference in the scope language to "door thresholds" as an exemplar

refers to door thresholds that are aluminum extrusions, not assemblies such as those at

issue here.  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1359.

They argue, next, that "Commerce's first redetermination, under respectful

protest, that even considering the exclusion, door thresholds are 'subassemblies' within

the meaning of the scope and not excludable 'finished merchandise' was also supported

by substantial evidence and in accordance with law."  Def.-Intervenors' Comments 2.

As discussed above, the Department's reasoning that "subassemblies" cannot qualify

for the finished merchandise exclusion because they are goods "designed for the sole

purpose of becoming part of a larger whole," *Columbia II*, 45 CIT at __, 536 F. Supp. 3d

at 1355 (quoting *First Remand Redetermination* at 24), was rejected by the court in

*Columbia II* as "contrary to the express terms of [the finished merchandise] exclusion,"

which includes "exemplars of products" even though they "are designed for the sole

purpose of becoming part of a larger whole,"  45 CIT at __, 536 F. Supp. 3d at 1356.

Third, referring to Columbia's door thresholds, defendant-intervenors argue that

"substantial record evidence also demonstrated that these products generally require

further finishing and fabrication after importation and prior to use, such that the

thresholds would also fail to meet the [finished merchandise] exclusion requirements in

this regard."  Def.-Intervenors' Comments 2.  This argument is also meritless.

Commerce permissibly concluded that the evidence upon which defendant-intervenors

rely for this argument did not pertain to the specific door thresholds at issue in this

proceeding.  Upon reassessing the record evidence, Commerce concluded in the Third

Remand Redetermination that "the record does not support the conclusion that

Columbia's specific door thresholds require cutting or fabrication after importation into

the United States."  *Third Remand Redetermination* at 18.

### III. CONCLUSION

For the reasons discussed in the foregoing, the court will enter judgment

sustaining the decision in the Third Remand Redetermination that Columbia's door

thresholds are not within the scope of the Orders.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: December 16, 2022
     New York, New York