Slip Op. No. 25-81

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

COLUMBIA ALUMINUM PRODUCTS, LLC,

                  Plaintiff,

      v.

**UNITED STATES,**

               Defendant,

     and

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,**

            Defendant-Intervenors.

</td><td>

**Before:  Timothy C. Stanceu, Judge**

**Court No. 19-00013**

</td></tr>
</table>

### OPINION

[Effectuating the mandate of the U.S. Court of Appeals for the Federal Circuit by reinstating a portion of a previous agency determination]

Dated: June 25, 2025

*Peter Koenig* and *Jeremy W. Dutra*, Squire Patton Boggs (US), LLP, of Washington, D.C., for plaintiff Columbia Aluminum Products, LLC.

*Aimee Lee*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., and *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director, for defendant.  Of counsel are *Nikki Kalbing*, Assistant Chief Counsel, and *JonZachary Forbes*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Robert E. DeFrancesco, III*, *Alan H. Price*, *Derick G. Holt*, *Elizabeth S. Lee*, *Enbar Toledano*, and *Adam M. Teslik*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenors Aluminum Extrusions Fair Trade Committee and Endura Products, Inc.

Stanceu, Judge: This litigation concerns certain "door thresholds" that plaintiff Columbia Aluminum Products, LLC ("Columbia") imported from the People's Republic of China ("China," or the "PRC"), each of which contained an "aluminum extrusion" as a component part. The issue in this litigation was whether that component part is subject to antidumping ("AD") and countervailing duty ("CVD") orders on certain aluminum extrusions from China (the "Orders").

Before the Court is the mandate issued by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in *Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024), ECF No. 98 ("*Worldwide V*"). Mandate in Appeal Nos. 2023-1532, 2023-1534 (Nov. 14, 2024), ECF No. 100 ("CAFC Mandate").

*Worldwide V* vacated this Court's judgment in *Columbia Aluminum Prods., LLC. v. United States*, 46 CIT __, 607 F. Supp. 3d 1275 (2022) ("*Columbia IV*"), under which the aluminum extrusion component in each door threshold was held to be outside the scope of the Orders, *id.*, 46 CIT at __, 607 F. Supp. 3d at 1283. *Worldwide V*, 119 F.4th at 972. *Worldwide V* reversed this Court's remand order in *Columbia Aluminum Prods., LLC. v. United States*, 45 CIT __, 536 F. Supp. 3d 1346, 1348, 1357 (2021) ("*Columbia II*"), and vacated this Court's subsequent opinions in *Columbia Aluminum Prods., LLC. v. United States*, 46 CIT __, 587 F. Supp. 3d 1375 (2022) ("*Columbia III*") and *Columbia IV*. *Id.*

In *Worldwide V*, the Court of Appeals directed this Court to "reinstate the non-protested portions" of an earlier agency decision, the "First Remand Redetermination" of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"). *Id*.; *see* Final Results of Redetermination Pursuant to Ct. Remand: Aluminum Extrusions from the People's Republic of China (Int'l Trade Admin. Dec. 23, 2020), ECF No. 48-1 ("*First Remand Redetermination*").[1] *Worldwide V,* 119 F.4th at 972. In the non-protested portion of the First Remand Redetermination, Commerce determined that the aluminum extrusion component in each of the door thresholds, but not the other components, were within the scope of the Orders. *First Remand Redetermination* 1–2, 10, 49.

## I. Background

Columbia commenced this action in 2019. Summons (Jan. 18, 2019), ECF No. 1, Compl. (Jan. 18, 2019), ECF No. 3. The Aluminum Extrusions Fair Trade Committee (the "petitioner") and Endura Products, Inc. ("Endura") were defendant-intervenors.[2]

---

[1] The appeal before the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") was consolidated with an appeal brought by defendant-intervenor Aluminum Extrusions Fair Trade Committee involving certain door thresholds imported by Worldwide Door Components, Inc. ("Worldwide"). *Worldwide Door Components, Inc. v. United States*, 119 F.4th 959, 961 (Fed. Cir. 2024). In its opinion, the Court of Appeals noted that "[f]or simplicity, we cite only the agency scope orders and trial court decisions where Worldwide appears as the captioned party." *Id.* at 964 n.3.

[2] Endura Products, Inc. withdrew its position as defendant-intervenor on March 23, 2023. Order (Mar. 23, 2023), ECF No. 97.

Background of this litigation is described in the prior opinions of this Court and

the opinion of the Court of Appeals and is summarized briefly herein.  *See Columbia*

*Aluminum Prods., LLC v. United States*, 44 CIT __, __, 470 F. Supp. 3d 1353, 1354–56 (2020)

("*Columbia I*"); *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1348–49; *Columbia III*, 46 CIT

at __, 587 F. Supp. 3d 1377; *Columbia IV*, 46 CIT at __, 607 F. Supp. 3d at 1277;

*Worldwide V*, 119 F.4th at 962–68.

## A.  Issuance of the Orders

Commerce issued the Orders in 2011.  *Aluminum Extrusions from the People's*

*Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin.

May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD*

*Order*").

## B.  Columbia's Imported Door Thresholds

At issue in this litigation are ten models of door thresholds, each of which "is an

assembly consisting of various components, including a component fabricated from an

aluminum extrusion and various components that are not made of aluminum."

*Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1355 (citation omitted).  The non-aluminum

components are made of such materials as polyvinyl chloride ("PVC") and wood-filled

plastic substrate or an extruded PVC substrate.  *Id*. (citation omitted).  "It is uncontested

that the single component in each door threshold that is fabricated from an aluminum

extrusion is made of an aluminum alloy identified in the scope language of the Orders."

*Id.* (citation omitted).

## C.  The Contested Scope Ruling

Columbia brought this action to contest the Department's determination on its

imported door thresholds (the "Scope Ruling"), which Commerce issued in 2018.

*Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's*

*Republic of China: Final Scope Rulings on Worldwide Door Components, Inc., MJB Wood*

*Group Inc., and Columbia Aluminum Products Door Thresholds* (Int'l Trade Admin. Dec. 19,

2018), P.R. Doc. 39, ECF No. 39 ("*Scope Ruling*")[3].  The Scope Ruling construed the scope

of the Orders to include the aluminum extrusion component of each door threshold, but

not the other components.  *Id.* at 37–38.  Commerce issued the Scope Ruling in response

to a request Columbia submitted on March 14, 2018.  *Columbia I*, 44 CIT at __, 470

F. Supp. 3d at 1355 (citation omitted).

The court ordered Commerce to reconsider its Scope Ruling three times.

*Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1354, 1361–63; *Columbia II*, 45 CIT at __, 536

F. Supp. 3d at 1348, 1354–57; *Columbia III*, 46 CIT at __, 587 F. Supp. 3d at 1385.

Responding to the court's opinion and order in *Columbia III*, Commerce decided in the

---

[3] Documents in the Joint Appendix (Dec. 4, 2019), ECF Nos. 39 (public), 42 (conf.), are cited herein as "P.R. Doc. __."  Citations to Joint Appendix documents are to the public versions.

"Third Remand Redetermination," under protest, that the imported door thresholds, in the entirety, are excluded from the scope of the Orders.  Final Results of Redetermination Pursuant to Court Remand 3, 19 (Int'l Trade Admin. Sept. 9, 2022), ECF No. 85-1 (*"Third Remand Redetermination"*).  The court sustained the Third Remand Redetermination.  *Columbia IV*, 46 CIT at __, 607 F. Supp. 3d at 1277, 1283.

## II. DISCUSSION

### A. Jurisdiction

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1516a.[4]  Among the decisions that may be contested according to section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order."  *Id*. § 1516a(a)(2)(B)(vi).

---

[4] Citations herein to the United States Code are to the 2018 edition.

**B. Scope Language Identifying "Door Thresholds" and "Parts" of "Door Frames" as Examples of Aluminum Extrusions that Are Within the Scope of the Orders**

The Orders, which contain essentially identical scope language, apply generally to "aluminum extrusions" made from specified aluminum alloys.[5]  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653–54.  In addition to an aluminum shape or form that results only from an extrusion process, the Orders also include, with certain exceptions, any product fabricated from a single aluminum extrusion, regardless of any drawing, finishing, coating, or fabricating operations, including operations that result in finished products, such as "fence posts," "electrical conduits," and "door thresholds,"[6] or in "parts for final finished products that are assembled after

_____

[5] The Orders define the term "aluminum extrusions" as "shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents)."  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

[6] "Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below).  Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

importation," including "door frames."[7]  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.

The Scope Ruling cited the "door thresholds" exemplar in the scope language in concluding that Columbia's products fall within the scope of the Orders.  *Scope Ruling* 34.  On that basis, among others, *Columbia I* rejected this approach, noting that the door thresholds exemplar refers to aluminum extrusions that *are* door thresholds, not door thresholds made from a combination of components, only one of which has been fabricated from an aluminum extrusion.  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1358.

## C.  The "Subassemblies" Provision and the "Finished Merchandise" Exclusion

The Orders also contain a provision described by Commerce as the "subassemblies" provision.  This provision was at issue in the decision of the Court of Appeals in *Worldwide V*, which affirmed the Department's determination that the provision described Columbia's door thresholds.  119 F.4th at 969–72.  The subassemblies provision is as follows:

> The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit'

---

[7] "Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture.  Such parts that otherwise meet the definition of aluminum extrusions are included in the scope."  *AD Order*, 76 Fed. Reg. at 30,650–51; *CVD Order*, 76 Fed. Reg. at 30,654.

defined further below.  The scope does not include the non-aluminum
extrusion components of subassemblies or subject kits.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Addressing

the subassemblies provision, the Scope Ruling stated as follows:

> Additionally, we find that the door thresholds, which constitute
> aluminum extrusion components attached to non-aluminum extrusion
> components, may also be described as subassemblies pursuant to the
> scope of the *Orders*.  Thus, the non-aluminum extrusion components (*i.e.*,
> . . . the PVC extrusions, insert bars, injection molded wood filled plastic
> substrates, extruded PVC substrates in Columbia's door thresholds),
> which are assembled with the in-scope aluminum extrusion components,
> are not included in the scope of the *Orders.*

*Scope Ruling* 34.  Commerce considered Columbia's door thresholds to fall within the

scope language of the Orders that refers to "subassemblies, *i.e., partially assembled*

*merchandise*," *AD Order*, 76 Fed. Reg. at 30,651 (emphasis added); *CVD Order*, 76 Fed.

Reg. at 30,654 (emphasis added), despite record evidence that these thresholds, in the

form in which they were imported as "merchandise," were fully assembled, *see Scope*

*Ruling* 14; *First Remand Redetermination* 26 (stating as a finding that Columbia's door

thresholds are "fully assembled").

The Department's reliance on the subassemblies provision also raised the issue of

whether Columbia's door thresholds qualified for an exclusion, the "finished

merchandise" exclusion, that the Orders also provided.  This exclusion is as follows:

> The scope also excludes finished merchandise containing aluminum
> extrusions as parts that are fully and permanently assembled and
> completed at the time of entry, such as finished windows with glass,

doors with glass or vinyl, picture frames with glass pane and backing
material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Commerce

concluded in the Scope Ruling that the finished merchandise exclusion did not apply,

relying, erroneously, on the "'express inclusion of "door thresholds" within the scope of

the *Orders*.'"  *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1358–59 (quoting *Scope

Ruling* 35–36).  *Columbia I* directed Commerce to "give full and fair consideration to the

issue of whether this exclusion applies, upon making findings that are supported by

substantial record evidence."  *Id.*, 44 CIT at __, 470 F. Supp. 3d at 1362.

        In the determination it submitted, under protest, in response to *Columbia I* (i.e.,

the First Remand Redetermination), Commerce again concluded that the finished

merchandise exclusion did not apply.  Commerce decided that Columbia's door

thresholds are "subassemblies" that are not "finished merchandise" within the meaning

of the finished merchandise exclusion, *First Remand Redetermination* 23, because they

"are not in and of themselves the final finished product, but rather a component of a

larger downstream product," *id*. at 24.  Regarding "downstream products," Commerce

mentioned as examples "door frames and permanent building structures."  *Id*.  In

reaching this conclusion, Commerce stated that it found instructive the decision of the

Court of Appeals in *Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*,

776 F.3d 1351, 1358 (Fed. Cir. 2015) ("*Shenyang Yuanda I*"), which rejected the claim that

certain curtain wall units were excluded from the Orders under the finished

merchandise exclusion.  *Id*.

Commerce summarized its conclusion using the terms of the finished

merchandise exclusion, stating in the First Remand Redetermination that "based on our

finding that the door thresholds are 'subassemblies,' we find that they do not constitute

'finished merchandise containing extrusions as parts that are fully and permanently

assembled and completed at the time of entry, such as finished windows with glass,

doors with glass or vinyl, picture frames with glass pane and backing material, and

solar panels.'"  *Id.* at 26 (citing the *Orders*).

This Court's decision in *Columbia II* identified a contradiction in the

Department's reasoning for deciding that the finished merchandise exclusion did not

apply to Columbia's door thresholds.  The *Columbia II* opinion stated that "[t]he

limitation on the finished merchandise exclusion Commerce attempts to impose is

contrary to the exemplars for doors and windows that the scope language used for the

purpose of illustration."  *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1356.  As the

opinion explained, the First Remand Redetermination attempted to resolve this

contradiction by addressing the door and window exemplars as follows:

> [T]hese exemplars are defined by the scope as finished merchandise that,
> in and of themselves, satisfy the finished merchandise exclusion.  Because
> they are themselves finished merchandise, they are not intermediary
> products to finished merchandise that might qualify as a subassembly.
> There is no need to further analyze whether the enumerated products in
> the finished merchandise exclusion work in conjunction with other

products, and no requirement that, for example, a window with glass or a
door with glass or vinyl be assembled into a house to satisfy the finished
merchandise exclusion.  In contrast, because door thresholds are not
specifically enumerated examples of finished merchandise, Commerce
must undertake an analysis of whether they satisfy the criteria for the
finished merchandise exclusion.  As explained above, we have determined
that Columbia's door thresholds are subassemblies meant to be
incorporated into a larger downstream product and, consequently, do not
satisfy the criteria for the finished merchandise exclusion.

*Id.*, 45 CIT at __, 536 F. Supp. 3d at 1355–56 (quoting *First Remand Redetermination* 46).

*Columbia II* opined that "[t]his reasoning is based on a serious misinterpretation of the

scope language setting forth the finished merchandise exclusion," by which "Commerce

interprets the exemplars therein as separate, individual exclusions rather than as what

they plainly are," i.e., "exemplars."  *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1356.  The

opinion stated, further, that

Commerce provides no convincing explanation of why goods that are, in
the Department's words, "designed for the sole purpose of becoming part
of a larger whole," *[First] Remand Redetermination* 24, or "meant to be
incorporated into a larger downstream product," *id*. at 46, must be
disqualified from the finished merchandise exclusion by that characteristic
alone, despite the exemplars of products that also are designed for the sole
purpose of becoming part of a larger whole yet are listed in the scope
language as examples of products that satisfy the terms of the finished
merchandise exclusion.

*Id*.  *Columbia II* directed "that Commerce, in a new decision, reconsider in the entirety

the decision reached in the [First] Remand Redetermination as to the finished

merchandise exclusion."[8]  *Id*., 45 CIT at __, 536 F. Supp. 3d at 1357.

In its decision in response to *Columbia II* (the "Second Remand Redetermination"), Commerce ruled, under protest, that Columbia's door thresholds are excluded in the entirety from the Orders.  *Columbia III*, 46 CIT at __, 587 F. Supp. 3d at 1376 (citing Final Results of Redetermination Pursuant to Ct. Remand (Int'l Trade Admin. Dec. 13, 2021), ECF No. 67-1).  Because the Second Remand Redetermination was not a decision in a form the court could sustain, the court directed Commerce to issue a third remand redetermination that is "in a form that would go into effect if sustained upon judicial review."  *Id*., 46 CIT at __, 587 F. Supp. 3d at 1385.

Commerce ruled in its response to *Columbia III* (the Third Remand Redetermination), under protest, that Columbia's door thresholds were excluded from

---

[8] In *Columbia Aluminum Prods., LLC. v. United States*, 45 CIT __, 536 F. Supp. 3d 1346, 1352–54 (2021) ("*Columbia II*"), this Court also declined to sustain an implied finding or inference in the First Remand Redetermination that Columbia's door thresholds required cutting or machining prior to incorporation into a door frame or other structure, concluding that such a finding or inference was unsupported by substantial evidence and contradicted by certain record evidence submitted by Columbia.  *Columbia II* directed Commerce to make an actual finding of fact to resolve the issue based on record evidence viewed in the entirety.  *Id*., 45 CIT at __, 536 F. Supp. 3d at 1354.  In its next decision, Commerce declined to reach a finding that any such cutting or machining was required upon its conclusion, under protest (discussed herein), that the finished merchandise exclusion applied to Columbia's door thresholds. *See Columbia Aluminum Prods., LLC. v. United States*, 46 CIT __, __, 587 F. Supp. 3d 1375, 1383–84 (2022).  In its final decision, Commerce found that the record evidence did not support a conclusion that Columbia's door thresholds required cutting or machining. *Columbia Aluminum Prods., LLC. v. United States*, 46 CIT __, __, 607 F. Supp. 3d 1275, 1283 (2022).

the scope of the Orders in the entirety. *Columbia IV*, 46 CIT at __, 607 F. Supp. 3d at 1282

(citing *Third Remand Redetermination* 3). The decision was in a form that would go into

effect if sustained by this Court. *Id*. Concluding that "[t]he essential agency findings

supporting" the Department's decision "are supported by substantial evidence on the

record of this case," *id*., the court sustained this decision and entered judgment in favor

of Columbia, *id*., 46 CIT at __, 607 F. Supp. 3d at 1283.

### D. The Decision of the Court of Appeals in *Worldwide V*

In the proceedings before the Court of Appeals, the parties "present[ed]

argument with respect to all three bases that the agency considered in the [Scope

Ruling], namely, whether Appellees' door thresholds can be considered subject

merchandise as (1) 'parts for final finished products,' (2) products 'identified with

reference to their end use,' or (3) 'subassemblies.'" *Worldwide V*, 119 F.4th at 968. The

Court of Appeals addressed the subassemblies provision and did not reach the other

two bases the parties addressed. *Id.*, 119 F.4th at 968, 972.

In addressing the subassemblies provision, the Court of Appeals made three

rulings. First, it ruled that the Department's determination in the Scope Ruling that

Columbia's door thresholds are subassemblies was not supported by substantial

evidence. *Id.*, 119 F.4th at 969. It explained that Commerce did not provide a sufficient

explanation for its conclusion, i.e., "at least some citation and analysis of the record

evidence." *Id.* Second, it ruled that the Department's subassemblies finding in the First

Remand Redetermination was supported by substantial evidence, *id.*, 119 F.4th at 971,

which cured "any defect in the agency's subassemblies analysis" in the Scope Ruling,

*id.*, 119 F.4th at 969.  Finally, the Court of Appeals ruled that "it was error for the trial

court to remand the case back to the agency for failure to consider the finished

merchandise exception in light of its subassembly finding," "[b]ecause subassemblies

and finished merchandise are mutually exclusive categories for the purpose of the

Orders."  *Id.*, 119 F.4th at 972.  In so concluding, the Court of Appeals applied its

decision in *China Custom Mfg. Inc. v. United States*, 61 F.4th 956, 960 (Fed. Cir. 2023),

issued after *Columbia IV* was decided.  *Id.* (citing also *Shenyang Yuanda I*, 776 F.3d

at 1358).  The Court of Appeals sustained, as supported by substantial evidence, the

Department's determination that Columbia's door thresholds were, in the words of the

subassemblies provision, "partially assembled merchandise," which Commerce reached

on the basis of the uncontested fact that Columbia's door thresholds, although fully

assembled when imported, are intended to be attached to other components after

importation.  *Id.*, 119 F.4th at 969–72; *First Remand Redetermination* 25.

### E.  Future Cases

The subassemblies provision has generated problems of interpretation, not only

for the courts but also for Commerce.  The problems stem in part from the Department's

current position, now affirmed by the Court of Appeals in *China Custom Mfg.* and

*Worldwide V,* that an imported good containing an "aluminum extrusion" (as defined in

the Orders) does not qualify for the finished merchandise exclusion if it is a

"subassembly," a scope term Commerce now considers to include, broadly, any good

that is designed to be incorporated into a larger downstream product after importation.

      In *Worldwide V*, the Court of Appeals alluded to one of the issues posed by the

Department's broad interpretation of the term "subassemblies" by referencing the

exemplars for finished windows with glass and doors with glass or vinyl that are

contained within the finished merchandise exclusion.  119 F.4th at 971–72.  As discussed

*supra*, *Columbia II* identified as a contradiction in the Department's reasoning that these

exemplars describe products specifically designed for the purpose of becoming part of a

larger whole, and thus would be considered "subassemblies" under the Department's

analysis, yet are expressly excluded by unambiguous scope language.  *Columbia II*,

45 CIT at __, 536 F. Supp. 3d at 1355–56.  In *Worldwide V*, the Court of Appeals

recounted that this Court sought "'a plausible explanation of why the articles

mentioned in the "door" and "window" exemplars of the finished merchandise

exclusion satisfy that exclusion but that [Columbia's] door thresholds, as described in

the Scope Ruling Request, do not.'"  119 F.4th at 971–72 (citations omitted).  Although it

interpreted the language of the Orders to mean that a product described as a

"subassembly" "'cannot qualify for the finished merchandise exclusion,'" *id.*, 119 F.4th

at 972 (quoting *China Custom Mfg.*, 61 F.4th at 960), the Court of Appeals acknowledged

this Court's "concern" arising from the exclusion from the scope of the products

identified in the door and window exemplars, *id.* ("We acknowledge the trial court's concern with line-drawing in the context of these Orders and agree that a discussion distinguishing the categories could have been a helpful addition to the agency's decision."). The Court of Appeals concluded, nevertheless, that "such an omission does not constitute reversible error," reasoning that the issue presented "'a question of fact reviewed for substantial evidence.'" *Id.* (quoting *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017)). In so ruling, the Court of Appeals applied *China Custom Mfg.* as a precedent sustaining the Department's interpretation that the "subassemblies" provision and the finished merchandise exclusion are "mutually exclusive." *Id.*

A second problem is that the Department's current, broad interpretation of the subassemblies provision can lead to unreasonable, and even absurd, results. That Commerce has been aware of this problem since at least 2012 is demonstrated by the Department's scope ruling on a "side mount valve control," or "SMVC." *See Antidumping Duty (AD) and Countervailing Duty (CVD) Orders: Aluminum Extrusions from the People's Republic of China (PRC): Final Scope Ruling on Side Mount Valve Controls*, Case Nos. C-570-968, Barcode No. 3103459-01; A-570-967, Barcode No. 3103461-01 (Int'l Trade Admin. Oct. 26, 2012), access.trade.gov. This "SMVC Scope Ruling" adopted unchanged the preliminary decision Commerce reached in that scope proceeding. *Id.* at 1–2; *Antidumping Duty (AD) and Countervailing Duty (CVD) Orders: Aluminum*

*Extrusions from the People's Republic of China (PRC): Initiation and Preliminary Scope Ruling*

*on Side Mount Valve Controls*, Case Nos. C-570-968, Barcode No. 3098425-01; A-570-967,

Barcode No. 3098426-01 (Int'l Trade Admin. Sept. 24, 2012), access.trade.gov ("*SMVC*

*Prelim. Scope Ruling*").

  The imported product at issue in the SMVC Scope Ruling was a collection of

components in unassembled "kit" form, which contained all the parts necessary to

assemble a complete side mount valve control.  *SMVC Prelim. Scope Ruling* 2, 7.

Commerce described the SMVC as a product that "manually controls water or foam

pressure and flow in firefighting equipment, specifically from hoses or their pumper

discharges, such as deck guns and monitors."  *Id.* at 2.  The kit contained some

components that were not aluminum extrusions.  *See id*.  Commerce explained that

"[a]fter importation, the SMVC is assembled and installed on to a fire truck" and that

"[o]nce installed, the SMVC controls the line pressure and subsequent stream distance

of the hose discharge."  *Id*.  Addressing both the finished merchandise exclusion and the

finished goods kit exclusion in the scope language of the Orders, Commerce stated its

position as follows:

> **Department's Position:**  In prior scope rulings, the Department found that
> merchandise could not be considered a "finished good" or "finished
> goods kit" if it was designed to work with other parts to form a larger
> structure or system. . . .  However, upon further reflection of the language
> in the scope of the <u>Orders</u> and for purposes of this preliminary scope
> ruling, the Department is revising the manner in which it determines
> whether a given product is a "finished good" or "finished goods kit."  The
> Department has identified a concern with this analysis, namely that it may

> lead to unreasonable results.  An interpretation of "finished goods kit"
> which requires all parts to assemble the ultimate downstream product
> may lead to absurd results, particularly where the ultimate downstream
> product is, for example, a fire truck.  This interpretation may expand the
> scope of the <u>Orders</u>, which are intended to cover aluminum extrusions.

*Id*. at 6–7 (footnotes omitted).  Referring to the kit exclusion and alluding to the

exemplars in the finished merchandise exclusion, Commerce ruled that the SMVC is a

"subassembly" that qualified for the finished goods kit exclusion, reasoning that "[t]his

is consistent with scope language that excludes merchandise like windows with glass or

doors with glass or vinyl, each of which includes all of the parts necessary to assemble a

complete window or door, but are necessarily assembled into a larger structure, such as

a house."  *Id*. at 7–8.

Commerce reversed the position taken in the SMVC Scope Ruling subsequent to

the decision of the Court of Appeals in *Shenyang Yuanda I*.  Consequently, the problem

persists that the Department's current interpretation of the subassemblies provision can

lead to "unreasonable" and "absurd" results.  A seemingly infinite variety of imported,

assembled products may contain an "aluminum extrusion" component yet be designed

to be incorporated into a larger downstream product after importation.  It is not

reasonable to expect that every such aluminum extrusion component would have been

sold separately to the importer, who even may be unaware of the presence of the

component.  In this respect, not only can the current Department interpretation lead to

results that, in the Department's own characterizations, are "unreasonable" or

"absurd," but it also can generate circumstances incapable of administration from a

customs standpoint.[9]

     In future cases, the solution to the various problems of interpretation posed by

the subassemblies provision, as currently applied by Commerce, may lie in provisions

of the Tariff Act itself, in particular sections 731 and 701(a), 19 U.S.C. §§ 1673, 1671(a).

Section 731 of the Tariff Act imposes, upon certain defined prerequisites, "an

antidumping duty" upon "a class or kind of foreign merchandise" that "is being, or is

likely to be, *sold in the United States* at less than its fair value."  19 U.S.C. § 1673

(emphasis added).  Similarly, section 701(a) of the Tariff Act imposes, upon certain

defined prerequisites, "a countervailing duty . . . equal to the amount of the net

countervailable subsidy" upon "a class or kind of merchandise *imported*, or *sold* (or *likely*

*to be sold*) for *importation*, *into the United States*."  *Id.* § 1671(a) (emphasis added).  The

"class or kind of merchandise" sold or offered for sale in the United States is that which

Commerce must define and address in an AD or CVD order.  *See id.* §§ 1673, 1673e(a)

(together providing for issuance of an order assessing an antidumping duty equal to the

amount by which normal value exceeds the export price or constructed export price of

---

     [9] Like the antidumping and countervailing duty provisions of the Tariff Act of 1930, *as amended* ("Tariff Act"), the appraisement provisions of section 402 of the Tariff Act are, as a general matter, structured for the assessment of duties on the imported merchandise itself, and typically on the imported merchandise that is sold for export to the United States, and not on a single upstream component or substance used in producing that imported merchandise.  *See* 19 U.S.C. § 1401a(a).

the merchandise sold or offered for sale in the United States); 1671(a), 1671e(a) (together

providing for issuance of an order assessing a countervailing duty equal to the amount

of the subsidy provided with respect to the manufacture, production, or export of the

class or kind of merchandise imported, sold, or likely to be sold for importation into the

United States).  Thus, both the antidumping and the countervailing duty provisions of

the Tariff Act are directed to "merchandise" that is considered to be unfairly traded, as

a result of dumping or a countervailable subsidy, upon being sold, or offered for sale,

for importation into the United States.[10]  In this respect, antidumping and

countervailing duties are considered "remedial," i.e., they are directed to remedying the

unfair prices at which the imported merchandise is sold or offered for sale in the United

States, if found to pose injury or threat to a domestic industry.

        In contrast, the Department's current interpretation of the Orders can result in

the assessment of antidumping and countervailing duties on products that are not sold

or offered for sale in the United States but instead are upstream components in the

---

        [10] Referring to the "merchandise" that is found to be unfairly sold or offered for
sale in the U.S. market due to dumping or a subsidy, the statute defines the role of the
U.S. International Trade Commission as determining whether "imports of *that
merchandise* or . . . sales (or the likelihood of sales) of *that merchandise*" cause injury or
threat of injury to a domestic industry, or material retardation of establishment of a
domestic industry.  19 U.S.C. §§ 1671(a) (emphasis added), 1673 (emphasis added).

merchandise that actually is imported and sold.[11]  The court is unaware of Tariff Act

provisions that expressly authorize Commerce to structure or apply an antidumping or

countervailing duty order in this way.  *See The Mosaic Co. v. United States*, 47 CIT __, __,

659 F. Supp. 3d 1285, 1294–95 (2023).

    In this case, the Department's interpretation of the subassemblies provision, as

applied to Columbia's door thresholds, will result in the assessment of antidumping

and countervailing duties on an upstream, incorporated component (i.e., the aluminum

extrusion component) of the merchandise that was imported and sold (i.e., the

complete, assembled door threshold, which is not an "aluminum extrusion" as defined

in the Orders).  Nevertheless, Columbia did not claim that the interpretation of the

subassemblies provision Commerce applied to its fully assembled door thresholds

contravened the plain meaning and purpose of basic Tariff Act provisions governing

the assessment of antidumping and countervailing duties.  As a result, the issue the

court has identified relating to these basic statutory provisions was not before it (and,

therefore, was not before the Court of Appeals) in this litigation.  Future cases could

provide clarity on the issue of whether the Tariff Act, and specifically sections 731 and

701(a) thereof, allows Commerce routinely to order the assessment of these remedial

---

[11] The Tariff Act contains a provision for assessment of a countervailing duty on an "upstream subsidy," but it applies only in circumstances not relevant here.  *See* 19 U.S.C. § 1677-1.

duties on upstream materials and components used in the production of the

merchandise that is sold or offered for sale in the United States.  Such clarity may be

needed, in particular, in light of the significant problems of interpretation presented by

the Department's current interpretation of the Orders and the limiting principle that

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92, 394–96, 412–13 (2024), applies to

an agency's interpretation of a statute it is charged to administer.

### III. CONCLUSION

For the present, it remains for this Court to enter a judgment that effectuates the

decision of the Court of Appeals in *Worldwide V* and governs the liquidation of the

entries at issue in this case.

*Worldwide V* directed this Court to "reinstate the non-protested portions of the

agency's *First Remand Redetermination*."  119 F.4th at 972.  The non-protested portions of

the agency's decision provided for the aluminum extrusion component within each of

Columbia's imported door thresholds, but not the other components, to be subject to

antidumping and countervailing duties, while the protested portion consisted of the

directive in *Columbia I* to consider whether the finished merchandise exclusion applied

to these products.  The court will enter a judgment accordingly.

      /s/ Timothy C. Stanceu    
Timothy C. Stanceu, Judge

Dated: June 25, 2025
    New York, New York